UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

 

No. 94-1977

IRIS V. RIVERA-FLORES,

Plaintiff, Appellant,

v.

PUERTO RICO TELEPHONE COMPANY,

Defendant, Appellee.

 

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Justo Arenas, U.S. Magistrate Judge] 

 

Torruella, Chief Judge, 

Coffin, Senior Circuit Judge, 

and Cyr, Circuit Judge. 

 

Harry Anduze Montano for appellant. 
Edgardo Colon Arraras, with whom Ina M. Berlingeri Vincenty and 
Goldman, Antonetti & Cordova were on brief for appellee.  

 

September 6, 1995
 

CYR, Circuit Judge. Iris Rivera-Flores ("Rivera") CYR, Circuit Judge.  

challenges certain district court rulings relating to various

commonwealth and federal claims against appellee Puerto Rico

Telephone Company ("PRTC"), her former employer, for condoning

the harassment she experienced at work on account of her visual

handicap, and for terminating her employment. We vacate the

district court judgment and remand for retrial.

I I

BACKGROUND1 BACKGROUND 

Rivera began working the night shift for PRTC as a

traffic operator in 1984. In January 1986, PRTC acceded to her

request for reasonable accommodation of her visual impairment 

congenital cataracts in both eyes and secondary angle closure

glaucoma by transferring her to a day-shift position as a

service representative. During her four-month tenure as a

service representative, Rivera's supervisors and co-workers

harassed her by making derogatory remarks about her visual

handicap; her supervisors reported her work performance as

unsatisfactory; and in April 1986, she was reassigned to her

former position as a traffic operator on the night shift. 

Rivera's labor union filed a successful grievance in

opposition to her reassignment, and in November 1988, Rivera was

 

1The district court decision directing judgment as a matter
of law is reviewed de novo. Favorito v. Pannell, 27 F.3d 716, 
719 (1st Cir. 1994). The evidence, and all reasonable inferences
therefrom, are viewed in the light most favorable to the party
opposing judgment. Id.  

2

reinstated, with back pay, as a sales representative on the day

shift. Her supervisors resumed their complaints that Rivera's

visual problems were adversely affecting her job performance;

provided her with inadequate on-the-job training; refused to give

her a desk or work assignments for several weeks; brushed aside

her repeated requests for reasonable accommodation (e.g., a

special magnifying glass to facilitate reading, and overtime

compensation for catching up on a preexisting three-month work

backlog); and attempted to coerce her into accepting an unfavor-

able job evaluation. Her day-shift supervisors and co-workers

resumed their derogatory comments (e.g., calling her "little

blind lady," "mentally retarded," "mutant," cross-eyed, and

physically repulsive), and hid or defaced her paperwork. 

In April 1989, Rivera reported to the State Insurance

Fund ("Fund"), and was diagnosed with, and treated for, an

emotional and mental condition attributable to the job-related

harassment.2 She filed suit in December 1989 against PRTC in

federal district court, seeking compensatory and punitive damag-

es, front and back pay, injunctive relief, prejudgment interest,

and attorney fees. When Rivera sought to return to work follow-

ing her discharge from the Fund in December 1991, PRTC informed

her that her position was no longer available because the Puerto

Rico workers' compensation statute obligated employers to hold
 

2The physicians treating Rivera noted wide fluctuations in
the intraocular pressure in her right ("good") eye. In April
1990, she underwent surgery on her right eye, which resulted in a
permanent, partial loss of visual acuity. Rivera attributed the
increase in intraocular pressure to job-related stress. 

3

jobs open for only twelve months after the onset of the disabili- 

ty. See P.R. Laws Ann. tit. 11, 7 (1991). PRTC sent its 

formal termination letter to Rivera on December 14, 1992, without

according Rivera a pretermination hearing.

Thereafter, Rivera filed her final amended complaint,

which included two federal claims. First, she alleged that PRTC,

an instrumentality of the Commonwealth of Puerto Rico, had

violated her procedural due process rights by terminating her

employment without a pretermination hearing. See U.S. Const. 

amends. V, XIV. Second, she pleaded a Rehabilitation Act claim,

based on her termination and on PRTC's negligent condonation of

the discriminatory harassment she experienced at the hands of its

employees. See 29 U.S.C. 794 (prohibiting discrimination based 

on handicap by any program "receiving federal financial assis-

tance"), 794a (prescribing equitable and legal remedies for

violation); 42 U.S.C. 2000d-7 (waiving State's Eleventh Amend-

ment immunity for damages in actions under Rehabilitation Act). 

Rivera's claims under commonwealth law alleged that

PRTC (1) violated P.R. Const. art. II, 8 (providing that

"[e]very person has the right to the protection of law against

abusive attacks on h[er] honor, reputation and private or family

life"), (2) violated the Commonwealth's statutory analog to the

Federal Rehabilitation Act, P.R. Laws Ann. tit. 1, 511, and (3)

intentionally or negligently inflicted personal injury, see P.R. 

Laws Ann. tit. 31, 5141-5142 (cause of action for damages

against employer for injury inflicted by employer and its employ-

4

ees). Rivera demanded jury trial on all claims. 

PRTC moved for summary judgment, asserting, inter alia, 

that the district court lacked subject matter jurisdiction over

the Rehabilitation Act claim because PRTC's receipt of Federal

Emergency Management Agency ("FEMA") disaster funds could not, as 

a matter of law, qualify it as a "program . . . receiving federal 

financial assistance." 29 U.S.C. 794. The district court

disagreed, rejected the jurisdictional challenge, and denied

summary judgment. Rivera-Flores v. PRTC, 840 F. Supp. 3, 6 

(D.P.R. 1993) (Laffitte, J.).

On the first day of trial, after Judge Laffitte unex-

pectedly recused himself, the parties agreed to proceed with the

jury trial before a magistrate judge. When Rivera rested her

case, PRTC moved for judgment as a matter of law on the Rehabili-

tation Act claim, see Fed. R. Civ. P. 50(a)(1), on the ground 

that Rivera had failed to introduce evidence that PRTC had

"receiv[ed] federal financial assistance" in the form of FEMA

disaster funds. Rivera responded that she did not proffer such

evidence, because Judge Laffitte's earlier order denying summary

judgment to PRTC conclusively established that the court had

subject matter jurisdiction over her Rehabilitation Act claim

against PRTC. In the alternative, Rivera requested that she be

permitted to reopen her case to present this evidence.

The magistrate judge summarily denied the request to

reopen and dismissed the Rehabilitation Act claim, after correct-

ly noting that a denial of summary judgment normally does not

5

settle material factual disputes upon which the plaintiff bears

the ultimate burden of proof. The court then decided to retain

supplemental jurisdiction over the three commonwealth claims, see 

28 U.S.C. 1367, but nevertheless discharged the jury after

concluding that Rivera had no independent Seventh Amendment right

to jury trial on these commonwealth claims in federal court, see 

U.S. Const. amend. VII, since plaintiffs enjoy no such parallel

right under the Puerto Rico Constitution.

Following a bench trial, the court entered judgment on

Rivera's claim for negligent infliction of emotional distress,

see P.R. Laws Ann. tit. 31, 5141-5142, awarding her $90,000 in 

damages. The three remaining claims were dismissed. First, the

federal procedural due process claim was dismissed on the ground

that Puerto Rico law presumes the natural expiration of an

employee's "property right" in her employment after one year of

continuous disability. Rivera-Flores v. PRTC, No. 89-1697, 1994 

U.S. Dist. LEXIS, at *30 (D.P.R. June 20, 1994) (citing Carron 

Lamoutte v. Compania de Turismos, 92 J.T.S. 27, at 9306 (1992)). 

Second, the claim asserted under the commonwealth constitution

failed for lack of proof of "reputational damage." Id. at *23. 

Third, the handicap discrimination claim foundered because the

1992 amendment to the Puerto Rico statute which provides a

private cause of action for damages is not made applicable to

pre-1992 causes of action. Id. at *30 (interpreting P.R. Laws 

Ann. tit. 1, 511). 

II II

6

DISCUSSION DISCUSSION 

A. Federal Rehabilitation Act Claim A. Federal Rehabilitation Act Claim 

Rivera focuses first on the dismissal of her Rehabili-

tation Act claim because she did not introduce evidence that PRTC

was a "program . . . receiving federal financial assistance."

She insists that this question had never been placed in genuine

dispute by PRTC, that the pretrial order denying PRTC's summary

judgment motion (Laffitte, J.) had established this "jurisdic-

tional" fact, and that she was caught off guard by the magistrate

judge's decision to treat Judge Laffitte's pretrial order as non-

dispositive. In these circumstances, she suggests, at the very

least the court should have allowed her briefly to reopen and

introduce the "undisputed" evidence that PRTC received FEMA

disaster funds. 

Trial court rulings on motions to reopen civil cases to

permit additional evidence are reviewed for abuse of discretion.

See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 

331 (1971); Hibiscus Assocs., Ltd. v. Board of Trustees of the 

Policemen and Firemen Retirement Sys., 50 F.3d 908, 917-18 (11th 

Cir. 1995); Joseph v. Terminix Int'l Co., 17 F.3d 1282, 1285 

(10th Cir. 1994); Bradford Trust Co. v. Merrill, Lynch, Pierce, 

Fenner & Smith, Inc., 805 F.2d 49, 52 (2d Cir. 1986); Swartz v. 

New York Cent. R.R. Co., 323 F.2d 713, 714 (7th Cir. 1963). 

While the particular criteria that guide a trial court's decision

to reopen are necessarily flexible and case-specific, it is

generally understood that a trial court abuses its discretion if

7

its refusal to reopen works an "injustice" in the particular

circumstances. See Gas Ridge, Inc. v. Suburban Agric. Proper- 

ties, Inc., 150 F.2d 363, 366 (5th Cir. 1945). Among the materi- 

al factors which should be assessed by the trial court are

whether: (1) the evidence sought to be introduced is especially

important and probative; (2) the moving party's explanation for

failing to introduce the evidence earlier is bona fide; and (3) 

reopening will cause no undue prejudice to the nonmoving party.

See, e.g., Joseph, 17 F.3d at 1285; see generally 6A James W. 

Moore, Moore's Federal Practice 59.04[13], at 59-33 (2d ed. 

1993).

1. The "New" Evidence 1. The "New" Evidence 

Trial courts as a rule act within their discretion in

refusing to reopen a case where the proffered "new" evidence is

insufficiently probative to offset the procedural disruption

caused by reopening. See, e.g., Joseph, 17 F.3d at 1285 (noting 

that "new" evidence would have been cumulative); Thomas v. S.S. 

Santa Mercedes, 572 F.2d 1331, 1336 (9th Cir. 1978) (affirming 

denial of motion to reopen where "new" evidence would have

provided little additional probative force). In the instant

case, however, there can be no question that the proffered "new"

evidence was critical to the Rehabilitation Act claim once it

became clear that subject matter jurisdiction was contested; it

was the only evidence on an essential element of the claim. See, 

e.g., Nathanson v. Medical College of Pa., 926 F.2d 1368, 1380 

(3d Cir. 1991). Thus, this factor weighed heavily in favor of

8

allowing the motion to reopen. 

2. Bona Fide Explanation 2. Bona Fide Explanation 

Trial courts likewise should consider whether the

moving party offered a bona fide explanation for failing to 

introduce the evidence before it finally rested its case. See, 

e.g., Bradford Trust Co., 805 F.2d at 52-53 (upholding denial of 

motion to reopen after trial court repeatedly warned that movant

would need to produce evidence on "key issue"); Air Et Chaleur, 

S.A. v. Eliot Janeway, 757 F.2d 489, 495 (2d Cir. 1985) (uphold- 

ing refusal to reopen where trial court forewarned movant that

omitted evidence would be essential). Moreover, the courts

recognize that it may amount to an abuse of discretion for a

trial court to decline to reopen in circumstances where the

movant has demonstrated "reasonably genuine surprise." Id. 

There are at least four compelling reasons for finding that the

"good faith" factor weighed heavily in favor of allowing the

motion to reopen in the instant case.

First, the record bears out the contention that Rivera

refrained from introducing the undisputed evidence of PRTC's

receipt of FEMA funds, not because she lacked proof but solely

because she reasonably understood that the district court's

subject matter jurisdiction had been settled prior to trial. In 

the statement of uncontested material facts accompanying its

summary judgment motion, for example, PRTC admitted receiving a

$9,765 check from FEMA, dated January 10, 1986, "while [Rivera]

was working as a Service Representative," as well as other FEMA

9

payments during 1987, 1989 and 1990. 

Notwithstanding these undisputed facts, PRTC presented

the magistrate judge with two alternative theories for its

narrowly focused legal contention that the district court lacked 

subject matter "jurisdiction": (1) FEMA fund recipients are

subject to the special anti-discrimination provisions of 44

C.F.R. 7.1 to 7.949 (1994), which do not proscribe employment 

discrimination by the recipient, and therefore PRTC was not

subject to the more comprehensive anti-discrimination provisions

of the Rehabilitation Act; or (2) the FEMA funds must be shown to 

have been received during the same time period in which the

alleged discriminatory acts against the recipient's employee took

place. 

Judge Laffitte had rejected both these legal theories

prior to trial: 

[PRTC's] arguments do not carry the day.
First, neither party contests the fact that 
after various hurricanes and heavy rains in
Puerto Rico, PRTC applied for Federal finan-
cial assistance to receive reimbursement for
expenditures paid to repair the damage caused
by the disasters. Neither party contests the 
fact that PRTC either was receiving Federal 
funding or was awaiting the receipt of fund-
ing throughout the period of the alleged
discriminatory conduct. The Court finds that 
in the context of the Rehabilitation Act, an
employer "receiving Federal financial assis-
tance" includes a qualified applicant who
although approved to receive the funds is
awaiting the receipt of them. Consequently,
because PRTC was either receiving or expect-
ing to receive Federal financial assistance
throughout the period pertinent to plain-
tiff's claim, the Court finds that PRTC was 
"receiving Federal financial assistance" and
is subject to the Rehabilitation Act for that 

10

period of time. 

Rivera-Flores, 840 F. Supp. at 5 (emphasis added).  

Normally, of course, the mere denial of a defendant's

summary judgment motion does not relieve a claimant of the burden

of introducing evidence at trial on every element essential to

her claim, even though the factual predicate was not in genuine

dispute at summary judgment. However, Civil Rule 56(d) estab-

lishes a procedural mechanism whereby a district court can ensure

a more enduring effect for its summary judgment ruling, and, with

the acquiescence of the parties, narrow the factual issues for

trial: 

If on motion under this rule judgment is not
entered upon the whole case or for all relief
asked and a trial is necessary, the court at
the hearing of the motion, by examining the
pleadings and the evidence before it and by
interrogating counsel, shall if practicable 
ascertain what material facts exist without 
substantial controversy and what material 
facts are actually and in good faith contro- 
verted. It shall thereupon make an order 
specifying the facts that appear without 
substantial controversy, including the extent
to which the amount of damages or other re-
lief is not in controversy, and directing
such further proceedings in the action as are
just. Upon the trial of the action the facts 
so specified shall be deemed established, and 
the trial shall be conducted accordingly.

Fed. R. Civ. P. 56(d) (emphasis added). 

The December 1993 order entered by Judge Laffitte fits

well within the spirit, if not the letter, of Rule 56(d). Its

language, see supra, belies PRTC's main contention that the 

district court order did not sufficiently "specif[y]" the facts 

that were "without substantial controversy." PRTC counters that

11

an order can have no Rule 56(d) effect unless the court expressly

announces its intention to enter a Rule 56(d) order, and then

"interrogates" counsel concerning the appropriateness of such

relief. 

On the contrary, the language of the rule contemplates

merely that the court, inter alia, "interrogat[e] counsel [to] 

ascertain what material facts . . . are actually and in good

faith controverted . . . ." Id. Rule 56(d) gives counsel no 

veto power over the decision to enter such an order. Although it

is unquestionably advisable for the court to announce its inten-

tion to enter such an order, Rule 56(d) does not make it compul-

sory.3 Thus, "interrogation" of counsel is a suggested means of 

determining facts not in substantial controversy, where the

pleadings and other evidence before the court leave room for

doubt. But it is the substance of the order that matters.  

Second, in our view Rivera's reliance on the pretrial

order seems justified in these circumstances since the fact not

in substantial "good faith" controversy did not pertain exclu-

 

3The lone case cited by PRTC for its view Audi Vision, 
Inc. v. RCA Mfg. Co., 136 F.2d 621, 625 (2d Cir. 1943) is 
inapposite. There the court reviewed a partial summary judgment
entered on various claims, but counterclaims remained for trial.
The appeal was dismissed as interlocutory because the partial
summary judgment was not "final." See Fed. R. Civ. P. 58(b). 
The appellate court simply recommended that trial courts alert
the parties to the fact that partial summary judgments are
subject to further modification as required to avoid "manifest
injustice." It did not require that trial courts alert the
parties when their pretrial orders result in a partial "adjudica-
tion" of less than all material factual issues. Id.  

12

sively to the merits of her claim. Unlike the three other

elements of 29 U.S.C. 794, "receipt of federal funds" also

directly implicates the district court's subject matter jurisdic- 

tion over a Rehabilitation Act claim. See Bentley v. Cleveland 

Cty. Bd. of Cty. Comm'rs, 41 F.3d 600, 603-04 (10th Cir. 1994). 

Contested factual matters relating to a court's subject matter

jurisdiction are properly determined on pretrial motions to

dismiss, see Fed. R. Civ. P. 12(b)(1); Bell v. Hood, 327 U.S. 

678, 682 (1946) (court must assure its jurisdiction before

reaching merits of claim), and even where the claim is set for

jury trial, the court has great latitude to direct limited

discovery and to make such factual findings as are necessary to

determine its subject matter jurisdiction. See Land v. Dollar, 

330 U.S. 731, 735 (1947); see also Fed. R. Civ. P. 12(b)(1). We 

need express no opinion concerning whether the Rehabilitation

Act's jurisdictional element might properly be adjudicated on a

Rule 12(b)(1) motion.4 Rather, we note merely that Rivera in no

sense acted unreasonably in treating Judge Laffitte's pretrial

order as determinative of the jurisdictional findings therein

contained. 

 

4Rehabilitation Act claims have been dismissed for lack of
subject matter jurisdiction prior to trial. See, e.g., Foss v. 
City of Chicago, 640 F. Supp. 1088, 1090 (N.D. Ill. 1986) (find- 
ing that defendant was not a "program . . . receiving Federal
financial assistance"), aff'd, 817 F.2d 34 (7th Cir. 1987). But 
cf. Careau Group v. United Farm Workers, 940 F.2d 1291, 1293 (9th 
Cir. 1991) (noting that, "where jurisdiction is so intertwined
with the merits that its resolution depends on a resolution of
the merits, `the trial court should employ the standard applica-
ble to a motion for summary judgment'") (citation omitted). 

13

Third, the record indicates that PRTC may have engen-

dered further confusion concerning the intended import of Judge

Laffitte's pretrial order. In the pretrial order, PRTC repre-

sented that Rivera's prima facie case required proof of three 

elements, omitting any reference to the fourth the "jurisdic- 

tional" element. See Pretrial Order, at 13.5 PRTC also repre- 

sented that it "[wa]s not a recipient of federal financial

assistance within the meaning of [the Rehabilitation Act]." 

Arguably at least, this connoted that PRTC continued to challenge

Judge Laffitte's legal rulings interpreting the Rehabilitation 

Act, but that it accepted the fact that proof of receipt of FEMA

funds no longer remained in bona fide dispute for trial. Thus,

Rivera presented a bona fide explanation for failing to introduce

her evidence before resting at trial.

3. Undue Prejudice 3. Undue Prejudice 

The third factor meriting consideration by the trial

court was the degree to which an order allowing Rivera to reopen

would prejudice PRTC. See, e.g., Joseph, 17 F.3d at 1285. 

First, we note that the motion to reopen was filed immediately

after Rivera rested her case, upon learning that PRTC did not 

share her understanding of Judge Laffitte's pretrial order. Cf. 

id. at 1284 (upholding denial of motion to reopen, and noting 

logistical unfairness to defendant in allowing plaintiff to

present new evidence after defendant had rested its case). 
 

5In her jury instruction requests, Rivera likewise listed
three Rehabilitation Act claim elements, omitting mention of the
"jurisdictional element." 

14

Presumably, the documentary evidence demonstrating PRTC's receipt

of FEMA funds, including a cancelled check attached as an exhibit

to PRTC's own Rule 56 statement of undisputed material facts,

constituted the only "new" evidence to be introduced. Unlike a

reopening to permit extended testimony, cf. Hibiscus Assocs., 

Ltd., 50 F.3d at 918 (denying motion to reopen, for expert 

testimony, where evidence was type that could be proved without

extensive expert testimony), the introduction of such readily

obtainable documentary evidence could have entailed but minimal

delay. Cf. Capital Marine Supply, Inc. v. M/V Roland Thomas, 719 

F.2d 104, 107 (5th Cir. 1983) (finding no abuse in granting

motion to reopen "where the missing testimony can be made avail-

able without undue delay"). 

In the final analysis, therefore, all three central

factors weighed overwhelmingly in favor of reopening, whereas the

summary ruling below afforded no apposite rationale for declining

to reopen. For these reasons, we conclude that the refusal to

reopen, resulting in dismissal of the Rehabilitation Act claim,

constituted an abuse of discretion. 

B. Discharge of Jury B. Discharge of Jury 

Following dismissal of the Rehabilitation Act claim,

the district court discharged the jury, over Rivera's timely

objection, and assumed the role of factfinder, on the mistaken

theory that Rivera had no right to jury trial on her commonwealth

claims. Puerto Rico litigants do have a right to jury trial on

their commonwealth claims in federal district court where the

15

court decides, as it did here, to exercise its supplemental

jurisdiction. See 28 U.S.C. 119, 451; Fed. R. Civ. P. 1 & 

38(a). The fact that the Puerto Rico constitution confers no

parallel right to jury trial on such claims is immaterial. 

Thus, the three commonwealth claims must be reinstated and

remanded for jury trial as well. 

Although in the normal course we would proceed no

further, the district court eventually dismissed several other

claims on legal grounds presently challenged on appeal. The

aborted jury trial in this case lasted several weeks, and a

retrial necessarily would entail a further expenditure of consid-

erable judicial resources. In the interests of judicial economy,

therefore, we briefly discuss the dispositive legal issues likely

to recur on remand.6 

C. Due Process Claim C. Due Process Claim 

The district court dismissed a federal claim alleging

that PRTC violated Rivera's due process rights by failing to

accord her a pretermination hearing. See U.S. Const. amends. V, 

XIV; Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985) 

(holding that state may not discharge public employee, who has

property right in employment position, without benefit of preter-

mination hearing). The process "due" Rivera is governed by

federal law; her property right is defined by commonwealth law.

See Kauffman v. PRTC, 841 F.2d 1169, 1173 (1st Cir. 1988).  
 

6Of course, our vacation of the district court judgment
moots Rivera's appellate challenges to the district court's
findings.

16

The Puerto Rico workers' compensation statute includes

what the district court described as a "caducity" provision:

employers need hold a disabled worker's position open for only

twelve months, after which they are not obligated to reinstate

the worker. See P.R. Laws. Ann. tit. 11, 7. The district 

court ruled that Rivera no longer had a "property right" in her

position as service representative because more than twelve

months had elapsed between the time her job-related disability

began (April 1989) and the time she sought to resume her position

in December 1991. We think its ruling is based on an erroneous

construction of commonwealth law.

The Puerto Rico Supreme Court has delineated the ap-

plicable standards. See, e.g., Carron Lamoutte v. Compania de 

Turismo del Estado Libre Asociado de Puerto Rico, 92 J.T.S. 27, 

at 9603 (1992). A public employee who once acquires a cognizable

"property right" in her employment position, and who suffers a

work-related injury or accident and reports to the Fund for

treatment, has an absolute right to reinstatement to her position

once she is discharged from the Fund (i.e., from medical treat-

ment), provided she seeks reinstatement within twelve months of 

her injury or accident. Id. at 9607.7 If the employee remains 
 

7PRTC urges affirmance on an alternate ground not presented 
to the district court; viz., Rivera's "property right" in her
position, unlike that of PRTC's managerial employees, was not
defined by the commonwealth statute, Personnel Act, P.R. Laws.
Ann. tit. 3, 1301 et seq. (defining "merit principle" posi- 
tions), but only under the collective bargaining agreement
between PRTC and her union. Mercado Vega v. Martinez, 692 F. 
Supp. 36 (D.P.R. 1988). PRTC therefore suggests that the "due
process" cases cited by Rivera are inapposite. We do not agree.

17

under treatment for more than twelve months, however, the employ- 

er acquires the right to dismiss her on the ground that she is no

longer physically or mentally capable of performing her former

work. Id. at 9608. Thus, it is merely the employee's absolute 

right not to be terminated on account of her disability, rather

than her property interest in her employment position, which

lapses under the one-year workers' compensation "caducity"

provision. 

Once the Commonwealth confers a "property interest" in

employment, it cannot take the position away without abiding by

the dictates of procedural due process. Id. at 9608-09. Twelve 

months after an employee's accident or injury an employer wishing

to discharge a disabled employee must notify her of its intention

not to keep her position open for reinstatement. Thus, in Carron 

Lamoutte, id., where the plaintiff-employee had exceeded the 

twelve-month, post-injury grace period, the employer was still

obligated to provide advance notice of dismissal and an informal
 

State statutory law is not the sole source of "property" 
interests in employment. See Board of Regents v. Roth, 408 U.S. 
564, 577 (1972) (property interests are created "from an indepen-
dent source such as state law") (emphasis added). For procedural 
due process purposes, it is well settled that an employee's
"property right" in her job may be established by contract. 
Perry v. Sindermann, 408 U.S. 593, 601-02 (1972) (noting that 
"'property' interests subject to procedural due process protec-
tion are not limited by a few rigid, technical forms [but]
[r]ather, 'property' denotes a broad range of interests that are
secured 'by existing rules or understandings,'" including express
or implied contracts) (citations omitted). Even the case cited
by PRTC so recognized. See Mercado Vega, 692 F. Supp. at 42 
(noting that either the Personnel Act or a collective bargaining 
agreement may give rise to a "property interest" which would 
entitle plaintiff to "some kind of hearing" consistent with the
dictates of procedural due process). 

18

pretermination hearing, at which she would be given the opportu-

nity to establish, inter alia, that (i) she had not been under 

post-injury treatment for more than twelve months;8 or (ii) she

was no longer suffering a disability which would prevent her from

returning to her former position. Id.; see also Laborde-Garcia 

v. PRTC, 993 F.2d 265, 267-68 (1st Cir. 1993). Further, the 

employer is required to review the employee's medical records,

and, after the pretermination hearing, to make express factual

findings on both these factors. Carron Lamoutte, 92 J.T.S. 27, 

at 9610. Accordingly, the district court erred in dismissing

Rivera's due process claim on the ground that her right to a

pretermination hearing lapsed automatically in April 1990. 

D. Commonwealth Constitutional Claim D. Commonwealth Constitutional Claim 

Rivera also challenges the dismissal of her claim for

damages under P.R. Const. art. II, 1, 8. Section 1 provides

that "[t]he dignity of the human being is inviolable." Section 8

provides that "[e]very person has the right to the protection of

law against abusive attacks on his honor, reputation or family

life."9 Rivera essentially argues that the evidence that her
 

8The other case relied on by the district court in dismiss-
ing the due process claim is not to the contrary. In Torres 
Gonzalez v. Star Kist Caribe, Inc., 94 J.T.S. 5 (1994), the court 
simply held that the 12-month term during which an employee
retains an absolute right to reinstatement is not tolled by those
temporary discharges from medical treatment which simply allow
the employee to return to work for a brief period of time. The
Gonzalez decision did not involve the procedural due process 
argument settled earlier in Carron Lamoutte.  

9The rights safeguarded by these provisions of the common-
wealth constitution operate, ex proprio vigore, to make violators 
amenable to tort-damage awards. See Arroyo v. Rattan Special- 

19

co-workers harassed and insulted her was sufficient to demon-

strate affronts to her "dignity" as a human being, in violation

of her Section 1 rights. 

The problem with Rivera's contention is fundamental:

at no point prior to this appeal has she alleged that PRTC

violated Section 1. In her amended complaint she stated that the

court had jurisdiction over "all claims arising out of violations

to Section 8, Article II of the Constitution of the Commonwealth 

of Puerto Rico." (Emphasis added.) In the pretrial order, Rivera

did not alter this designation, even when PRTC specifically

characterized it as a Section 8 claim. Thus, it is clear that

the district court simply dismissed the Section 8 claim for lack

of proof, making no mention of any Section 1 claim.10 Finally,

on appeal Rivera does not appear to contest that she failed, as a

matter of law, to prove her Section 8 claim since her co-worker's

insults, based primarily on her physical handicap, were not

probative of damage to her reputation or honor.11

E. Handicap Discrimination Claim E. Handicap Discrimination Claim 

Finally, Rivera challenges the dismissal of her common-

wealth claim based on handicap discrimination under Law 53

(codified at P.R. Laws Ann. tit. 1, 511 (1992)). 
 

ties, 17 O.T.S. 43, 72 (1986).  

10Nor did Rivera file a motion for reconsideration alerting
the court to her Section 1 claim.

11We express no opinion on whether Rivera should be allowed
on remand to amend her pleadings to permit a Section 1 claim to
be tried to the jury. See Fed. R. Civ. P. 15 (amendment of 
pleadings). 

20

In 1959, the Puerto Rico Legislature enacted Law 100

(codified at P.R. Laws Ann. tit. 29, 146, 147, 147a, 148,

149), which prohibited employment discrimination based on age,

gender, race, color, social or national origin, social condition,

or religion, and permitted persons who were subjected to such

discrimination to bring tort claims for damages. However, Law

100 made no mention of employment discrimination based on physi-

cal or mental handicap. In 1985, the Legislature enacted Law 44,

which prohibited all public or private institutions from engaging

in handicap discrimination in employment, but limited the en-

forcement of the prohibition to executive branch agencies. In

1992, the Legislature enacted Law 53 (codified at P.R. Laws Ann.

tit. 1, 511 (1992)), which for the first time provided that

handicap discrimination claimants would have the same private

remedies as claimants under Law 100, including a right of action

for damages. The district court held, however, that Law 53

contained no provision permitting victims of handicap discrimina-

tion to sue for damages until 1992, that PRTC's alleged discrimi-

natory actions antedated the 1992 amendment, and that section 511

could not be applied retroactively to Rivera's claim. 

In Puerto Rico, statutes generally are presumed to have

prospective effect only, unless the statute expressly or by

inescapable inference demonstrates a contrary legislative intent.

See P.R. Laws. Ann. tit. 31, 3 (no retroactive application of 

statutes absent express retroactivity provision); Velez Rebroyas 

v. Secretary of Justice, 115 D.P.R. 533 (1984), 15 O.T.S. 700, 

21

712 (1984); accord Landgraf v. USI Film Prods., 114 S. Ct. 1483 

(1994) (finding that 1990 Civil Rights Act amendments did not

overcome the presumption of nonretroactivity). Rivera points to

no language in Law 53 which would overcome the presumption of

nonretroactivity, nor have we found any evidence of such an

intent in the legislative history.12 

Rivera argues instead that we should follow the analo-

gous reasoning of courts which have held that the 1987 Civil

Rights Restoration Act is retroactive. See, e.g., Lussier v. 

Dugger, 904 F.2d 661, 665-65 (11th Cir. 1990); Ayers v. Allain, 

893 F.2d 732, 754-56 (5th Cir.), withdrawn and vacated on other 

grounds, 914 F.2d 676 (1990). These cases are inapposite, 

however, because that statute expressly provided that the amend- 

ments were intended to overturn intervening United States Supreme

Court decisions, so as to comport with Congress's original

intent. Law 53 does not suggest in any way that the Legislature

intended in 1959 that victims of handicap discrimination were

protected by Law 100, nor that it intended in 1985 that such

victims would have a private cause of action for damages under

Law 44. Thus, Law 53 is inapposite to the explicit "clarifica- 

tion" in the 1987 Restoration Act. Finally, Rivera

contends that even if Law 53 is not retroactive, handicap dis-

crimination claimants still had a vehicle for recovering compen-

satory damages before August 1992. While Law 44, enacted in
 

12Law 53 establishes an effective date of August 30, 1992, a
provision which would seem superfluous were Law 53 intended to
have retroactive effect to then-pending actions.

22

1985, did not make handicap discrimination an injury redressable

in a private action for damages, the statute clearly designated

this type of discriminatory conduct a "culpable act," and a

"culpable act" resulting in injury can serve as the predicate for

a suit for damages under P.R. Laws Ann. tit. 31, 5141-5142.

Even if Rivera's reasoning were arguable, the matter is moot.

Her claim under 5141-5142 was not dismissed by the court; it 

formed the legal basis for the $90,000 damages award. On remand,

that claim too must be presented to the jury.13 

The district court judgment is vacated and the case is The district court judgment is vacated and the case is 

remanded for further proceedings consistent with this opinion. remanded for further proceedings consistent with this opinion. 

 

13We note a proviso which must be addressed on remand. It
is not entirely clear that the application of Law 53 to Rivera's
complaint would be fully retroactive in effect. Law 53 expressly
provided that it would take effect on August 30, 1992. PRTC's
last alleged act of discrimination against Rivera occurred on
December 14, 1992, when it sent its final letter of termination
to Rivera. Thus, if the date of Rivera's formal termination were
fixed on that date, damages attributable to the termination might
be actionable under Law 44. 

23