**Angel G. MERCADO VEGA, Plaintiff,**

v.

**Arsenio MARTINEZ, et al., Defendants.**

**Civ. No. 86–0163(RLA).**

United States District Court,
D. Puerto Rico.

July 1, 1988.

Frank Rodríguez García, Ponce, Puerto Rico, for plaintiff.

Antonio Fiol Matta, Fed. Litigation Div., Dept. of Justice, San Juan, Puerto Rico, for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

The present case is one of patronage dismissal allegedly motivated by party politics in violation of plaintiff's civil rights. *See* 42 U.S.C. sec. 1983. Jurisdiction is alleged under 28 U.S.C. secs. 1331, 1343 and pendent jurisdiction.[1] Plaintiff, Mr. Mercado, who worked for the State Sugar

Corporation of Puerto Rico, seeks reinstatement, damages, costs and attorney's fees.

Plaintiff alleges that defendants dismissed him from his position as Accountant I of the Sugar Corporation of Puerto Rico solely because of his affiliation to the New Progressive Party. He alleges that the defendants are all members of the rival Popular Democratic Party and that their actions violated his rights under the First and Fourteenth Amendments to the United States Constitution.

After three full days of trial and careful consideration of all the evidence and the demeanor and credibility of the witnesses, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff Angel Mercado–Vega was employed in various positions culminating with Accountant I, by the Sugar Corporation of Puerto Rico from approximately June 10, 1959 until February 28, 1985.

2. The Sugar Corporation is a subsidiary of the Land Authority of Puerto Rico, an instrumentality of the Commonwealth of Puerto Rico, created pursuant to Act Number 26 of April 12, 1941, 28 L.P.R.A. 241 *et seq.*

3. Defendant Arsenio Martínez is the Executive Director of the Sugar Corporation.

4. Defendant Francisco R. Silvestris is Auxiliary Executive Assistant at the Sugar

---

1. In the complaint and at trial plaintiff asserted several pendent state claims under the Constitution of the Commonwealth of Puerto Rico and 29 L.P.R.A. sec. 136, 137 and 146 (which generally provides for double damages in cases where an employer (patrono) discriminates politically against an employee). We have carefully considered the factors enunciated in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) for exercising the power of pendent jurisdiction and have decided not to use those discretionary powers in this case. *Id.* ("Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.") We want to avoid needless decisions on matters of state law and we are gravely concerned that plaintiff may be seeking to exploit pendent jurisdiction as a windfall, i.e., trying to

recover twice on the same injury which is not allowed. *See Clappier v. Flynn*, 605 F.2d 519, 528–531 (10th Cir.1979). Additionally, we seriously question whether Puerto Rico Law 382, 29 L.P.R.A. sec. 136, applies to a *government* employer. Admittedly, the definition of employer in the statute is quite broad but it falls short of specifically mentioning the government. Something that other sections in the chapter, albeit not dealing with this type of liability, clearly do. Therefore, reading all sections *in pari materia* and giving the legislature the presumption that it is aware of what it includes and excludes from section to section in a chapter of any statute book, we are even more reluctant, based on our quick reading of the provisions in question, to exercise our discretion in favor of plaintiff on this matter.

Corporation and was administrator of the Mercedita Sugar Factory during the time plaintiff worked there as Accountant I, a career position. Plaintiff previously worked at the Guánica plant but there the Accounting Department was closed in 1984.

5. Plaintiff is a member of the New Progressive Party.

6. Defendant Arsenio Martínez is a member of the Popular Democratic Party (PDP).

7. However, Defendant Francisco Silvestris is at present, and since 1972, unaffiliated to any particular party. Importantly, he was an active member of the New Progressive Party (NPP) from 1968 to 1972. Since then he has not participated in any political activity. Plaintiff, at trial, stated that until the year of his dismissal he had always thought of Mr. Silvestris, his immediate supervisor, as a member of his same party, i.e., the NPP.

8. On January 24, 1985 defendant Arsenio Martínez sent plaintiff a letter informing him that, effective February 28, 1985, regrettably and due to "the difficult and grave economic situation of the Sugar Corporation" he would be dismissed. The letter also states that the financial condition of the company and the concomitant reduction in personnel "was transmitted to all of you in our recent orientation visit." Also, plaintiff was informed of his right to appeal the determination to a "Board of Appeals" within thirty days.

(a) Mr. Silvestris recommended plaintiff's dismissal, and that of several others, to Mr. Martínez. He had originally recommended the dismissals in March 1984 to then Executive Director of the Sugar Corporation, César Raffucci, because of the closing of the Guánica plant where plaintiff worked at the time. Although four of the recommendees were dismissed, plaintiff was retained to do inventory work at Guánica and later at Mercedita.

(b) On January 24, 1985 a meeting was held at Central Mercedita between plaintiff, Emiliano Morales (another employee who was dismissed) and Gerardo Benito, Sugar Corporation Officer, and Personnel and Industrial Relations Director of the Sugar Corporation at the Mercedita plant, and Edelmiro Rodríguez, Personnel Director of The Mercedita Sugar Cane Mill. The uncontested minutes of that meeting and testimony at trial reflect that plaintiff was informed that: (1) he was going to be dismissed; (2) would receive a letter to that effect; (3) the dismissal would be effective in February; and (4) that those in disagreement with their dismissals could appeal the same.

(c) The minutes of the January 24, 1985 meeting and testimony at trial also reflect that plaintiff asked whether the dismissal was for years of service or because the position was being eliminated. To that, Mr. Benito answered that the position, and eventually possibly the plant itself, was being eliminated. Mr. Benito further stated that the precarious and dismal economic situation in the Sugar Industry was forcing the dismissals.

(d) At the meeting, Mr. Morales asked several questions about his dismissal which were equally applicable to plaintiff. And finally, plaintiff asked whether or not he would get $2,500 in severance pay. Plaintiff, at trial, conceded the truth of the text of the entire minutes.

9. Since at least 1980, as conceded by plaintiff at trial, the Sugar Corporation indeed has suffered economic chaos. This has prompted the dismissal of over a thousand employees, including over a hundred administrative employees performing functions similar to plaintiff's; pay freezes and other austerity measures have also been implemented.

10. Together with plaintiff at least one other employee was dismissed from the Mercedita Sugar plant; and he was a member of the PDP. Six months later, this employee was reinstated to a position as agronomist or engineer. His original position, unlike plaintiff's, was as Assistant Auditor I.

11. Plaintiff has stipulated that during the relevant period he was a unionized employee of the Sugar Corporation.

12. There was a Collective Bargaining Agreement in effect between plaintiff and

his employers at the time of his dismissal. *See* Defendant's exhibit D.

## CONCLUSIONS OF LAW

Plaintiff complains that he was denied his first amendment right to freedom of association because he was dismissed solely due to his affiliation to the NPP, and that he was denied his fourteenth amendment right to due process of law because he was dismissed without a prior hearing as required by *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) and its progeny.

The fact that plaintiff's former employer, the Sugar Corporation, is an arm of the State and that he has sufficiently alleged constitutional torts brings this case fully within the ambit of 42 U.S.C. sec. 1983 which states in pertinent part as follows.

> Every person who, under color of a statute, ordinance, regulation, custom or usage, of a state ... subjects or causes to be subjected, any citizen of the United States or other within the jurisdiction thereof to the deprivation of any rights, privileges, or immunitites secured by the constitution of laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

## 1. FIRST AMENDMENT: FREEDOM TO ASSOCIATE

Plaintiff claims that his dismissal violated his first amendment rights pursuant to the *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) line of cases.[2]

The First Circuit has made it clear that "[i]n order to establish a *prima facie* section 1983 claim that their terminations constituted patronage dismissals violative of

their First Amendment rights under [*Branti* and *Elrod*], the plaintiffs would have to prove, at trial, that affiliation with the NPP was the substantial or motivating factor underlying their dismissals." *Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1172 (1988) (Citing *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Kercado–Meléndez v. Aponte–Roque,* 829 F.2d 255, 264 (1st Cir.1987); *Rosaly v. Ignacio,* 593 F.2d 145, 148–49 (1st Cir.1979)).

■ Plaintiff established his *prima facie* case by pointing to the proximity, barely 3 weeks, between his dismissal and the change of administration from NPP to PDP controlled. This under Puerto Rico law creates a presumption of discrimination. 29 L.P.R.A. sec. 137. The fact that at least one of the defendants is PDP affiliated also buoys that presumption. But it is a very weak one in this case given that plaintiff's position was eliminated and no PDP member replaced him. In addition, his direct supervisor and the person who recommended his dismissal was unaffiliated at the time and was once active in plaintiff's own political party. Further, there was at least one employee dismissed with plaintiff who was not associated with plaintiff's party but rather with the PDP. Given these circumstances and our impression that defendants and their witnesses were truthful, we are hardpressed to emphatically find that defendants were motivated primarily by their animosity against plaintiff's political persuasion when they dismissed him. (Indeed, it is difficult to conclude that such animosity exists, especially on the part of Mr. Silvestris.) However, despite our misgivings, and considering the relative laxity of the *prima facie* requirement which generally favors plain-

2. *Elrod* was the seminal case whereby the Supreme Court substantially changed the law to extend Constitutional protection against patronage dismissal to most public employees. The only exception made was for the "underlings" of elected officials employed in "policymaking" or "confidential" positions. These last, the Court said, must yield their first amendment rights to

the greater interest of preserving representative government. Similarly, *Branti* explained that an individual employed by the Government is protected from a politically motivated discharge only if "a party affiliation is [not] an appropriate requirement for the effective performance" of his or her job.

tiffs [3] we will hold that plaintiff made his threshold showing under *Branti–Elrod* simply in order to provide him with the benefit of the doubt. This of course does not end our inquiry since Supreme Court case law commands that once plaintiff has established his *prima facie* case, defendants then have the opportunity to demonstrate that plaintiff was fired for legitimate reasons other than his party affiliation. If achieved, the plaintiff would then have to prove that he would not have been fired "but for" his political affiliation. *See, e.g., Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 417, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979); *Kercado–Meléndez v. Aponte-Roque,* 829 F.2d at 264; *Kauffman v. Puerto Rico Telephone Company,* at 1172.

We find that defendants adequately showed that they had legitimate business-related reasons for dismissing plaintiff and that plaintiff thereafter failed to prove that these reasons were simply a pretext that hid true anti-NPP animus.

Defendants, through documentary and testimonial evidence, showed that the sugar industry in Puerto Rico has been on its deathbed for more than a decade after a much earlier heyday as the King Crop of Puerto Rico. This has prompted the heavily indebted Sugar Corporation to further tighten an overstreched belt by imposing budget cuts that included, and continue to include in some ways, heavy amounts of personnel reduction, the freezing of certain salaries for several years, and the general budget reductions typical of moribund government agencies. Plaintiff was caught in this maelstrom of austerity. He, among countless others, was fired and his position was eliminated. Without doubt this was a tragic happening given his twenty six years of unblemished service; but still, from what was presented at trial, a

perfectly legitimate one given the circumstances facing his employer.

What happened here was not the typical wholesale replacement of NPP personnel with the PDP cronies of a newly arrived PDP officialdom. Rather, it was the termination of positions and dismissals of employees affiliated to *both* rival parties by reluctant officers who constituted a mixed bag of political persuasions, compelled as they were by a terribly menacing economic crunch.

Plaintiff attempted to rebut these legitimate reasons by again raising the proximity of Mr. Mercado's dismissal to the inauguration of the PDP party. Also, he sought to impeach defendant Silvestris' assertion that he was politically unaffiliated primarily by relating an incident in a mountaintop bar where Mr. Silvestris allegedly drove by on some uncertain date in December 1984 solely to tell plaintiff that he was going to fire him because "he (plaintiff) was NPP." And then, finally, plaintiff further attacked defendants' reasons by stating that several PDP employees who were fired with plaintiff (one several years before) were rehired six months later and that defendants' economic crisis argument was a hoax because during the month plaintiff's termination became effective he received a letter notifying him of a nominal pay raise thus putting in doubt the pay freezes and the whole austerity program proclaimed by defendants.

As to the proximity argument, defendants convincingly showed that plaintiff was earmarked for dismissal several months prior to the elections of November 1984 because the accounting department of the Guánica mill where he worked had been closed and plaintiff was performing menial inventory work there and later at Mercedita. However, plaintiff was not fired at that time, in March, apparently because of

---

**3.** We are also mindful that the very insidiousness of political discrimination or any other form of employment discrimination makes it very difficult to prove. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (Circumstantial evidence can be used to supply inferences of an intent to infringe upon

constitutional rights) and *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (Direct proof of discrimination not required); *but cf. Personnel Administration of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (In many cases the circumstances are such that the inferences fail to ripen into proof).

Administrative noblesse oblige. Later, in October, plaintiff was again retained because of the law in Puerto Rico which discourages personnel actions shortly before and after an election. *See 29 L.P.R.A. sec. 137.* As soon as the "election stay" was lifted, i.e., January, 1985, Mr. Mercado was fired according to a *pre-election* scheme.

The argument regarding codefendant Mr. Silvestris', as plaintiff himself labelled it, "turncoat" behavior (that is, turning from NPP to PDP at his convenience) was not supported by anything except plaintiff's equivocal testimony which depended heavily on plaintiff's own anecdote about a meeting between himself and Mr. Silvestris. There were no witnesses to the remote encounter and Mr. Silvestris convinced us that he did not travel that mountain route normally and never blew his supposed cover to plaintiff. In fact, *plaintiff* went to great lengths to express that he never felt any personal animosity from Mr. Silvestris and did not know his political affiliation.

Regarding the PDP employees fired and later rehired, it was made clear at trial that none of them were rehired as Accountant I's and that that position still remains buried with the Guánica mill.

Finally, regarding the letter informing plaintiff of a raise as indicative of the falsehood of the austerity program, we find no such indication. Not only has plaintiff repeatedly conceded that the Sugar Corporation was in financial limbo but we view the letter as nothing more than a mockingly ironic example of bureaucratic red-tape, i.e., an unfortunately not so uncommon governmental faux pas.

In sum, plaintiff failed to support his allegation that he was dismissed due to his political affiliation. Accordingly, his first amendment rights were not violated and all claims based upon them will be dismissed.

## DUE PROCESS

"It is well-established that the Due Process Clause of the Fourteenth Amendment guarantees public employees who have a property interest in continued employment the right to at least an informal hearing before they are discharged." *Kauffman v. Puerto Rico Telephone Company,* at 1173 (Citing *Cleveland Board of Education v. Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491; *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972); *Kercado–Meléndez v. Aponte–Roque,* 829 F.2d at 262).

To determine if a property interest exists we have to look not to the Constitution but to the "existing rules or understandings that stem from an independent source such as state law." · *Loudermill,* 470 U.S. at 539, 105 S.Ct. at 1491–92 (quotations and citations omitted). Yet while state law governs the creation of the property interest, the question of the process due is a matter of federal law. *Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1492–93.

Given the uncontested fact that plaintiff Mercado's position was that of a career employee and that he was not illegally hired to such position, then Mr. Mercado, as opposed to a confidential employee, has a clear property interest in continued public employment. *See Kercado–Meléndez,* 829 F.2d at 262. There is, however, a more significant and controlling source for the creation of plaintiff's property interest. And that source is the Collective Bargaining Agreement that was in effect between plaintiff, an admitted unionized employee, and his employer. *See* Collective Bargaining Agreement ("the agreement") Article VII, sec. 2. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972) (*Property interests* may be *created,* not only *by explicit contractual provisions* but also by an implied contract or officially sanctioned rules of the work place).

 Given that plaintiff was a unionized employee at the time of his dismissal, the merit principle established by the Puerto Rico Public Service Personnel Act, 3 L.P.R.A. 1301 *et seq.* (the Personnel Law) does not apply to him; rather, the Collective Bargaining Agreement controls. *See* 3 L.P.R.A. sec. 1338; *Reyes Coreano v. Director Ejecutivo,* 110 D.P.R. 40 (1980). *Cf.*

3 L.P.R.A. sec. 1311(2); *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982).

Plaintiff does not actually contest the exclusionary force of the Collective Bargaining Agreement vis-a-vis the Personnel Law. He argues instead that the issue was raised too late, i.e., almost a week before trial, and thus constitutes a surprise defense. Admittedly the issue was raised rather tardily, but the Court was, and is, satisfied that defendants came upon this evidence late and that plaintiff's experienced counsel, indeed Mr. Rodriguez specializes in political-discrimination cases, had sufficient time before trial to prepare. We also question plaintiff's objection given that he admitted to being a long-standing unionized member and thus the impact of this information on the instant case should have been apparent to plaintiff long before trial. In any case, our conclusion that plaintiff received the process of law due him would *roughly* apply in equal terms if we were to be guided by the Personnel Law instead of the union contract. In both cases we have to determine if plaintiff received the process of law due him which in term boils down to whether or not he received "some kind of hearing" *prior* to termination. *See Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491. The requirement is basically that plaintiff be given, prior to dismissal, oral or written notice—with explanations for the termination and an opportunity to present his side of the story. Although plaintiff argues strenuously that he received no pretermination hearing, the evidence at trial points otherwise. Plaintiff's objections really go towards the *kind* of hearing Mr. Mercado received: (1) that the hearing was not conducted by codefendant Martínez as Executive Director of the Corporation and (2) that plaintiff had no opportunity to respond.

■ First, there is no denial of due process when, as here, a corporation decides to conduct the *Loudermill*-type hearing with its personnel officers rather than with one of its executive officers. Plaintiff has presented no case law that says otherwise and we are not inclined to do the work for him. However, it stands to reason that an officer, especially one related to the personnel office, can represent the corporation in these situations and provide a hearing fully within the parameters of *Loudermill*.

Second, plaintiff makes (too) much of the argument that what happened between the corporation and plaintiff was not a hearing but a notice. We see this as a meritless play on words: The label does not make the right. The minutes of the meeting held on January 24, 1985 between officers of the Corporation, plaintiff and another employee clearly show that plaintiff was given oral notice, quickly followed by written notice,[4] of his impending dismissal and that he was told specifically that he was being fired because of economic constraints forcing the termination of his position. The minutes further show, and plaintiff on the witness stand did not refute this at all, that plaintiff asked several questions regarding the reasons for his dismissal and the possibility of a $2,500 severance payment. His co-worker, Emiliano Morales (the PDP member who was also dismissed), moreover, asked several substantive questions of import to plaintiff as well. Thus, plaintiff was told of his impending dismissal, was explained the reasons therefore, was given the opportunity to present his side of the story, his comments were heard, and his questions were answered and, in addition, he listened to a discussion of substantive issues related to his dismissal. It was clear to all gathered that the administration had not cast its pink-slip dragnet erroneously upon plaintiff or upon Mr. Morales for that matter. *Loudermill* requires no more. ("... the pretermination hearing need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions ..." *Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491.)

In addition, plaintiff was advised of his right to appeal the termination to an Appeals Board within thirty days. He claims

---

**4.** *See* letter dated January 24, 1985 from Mr. Martínez to plaintiff. *See* also letter from plaintiff to Mr. Martínez (dated February 26, 1985) in which plaintiff acknowledges receipt of the written notice on January 24th.

no Appeals Board existed but the fact is that he never initiated the process to find out. Nor did he assert his rights to take the 'case to an arbiter as provided in the Agreement. He claims that a letter, dated February 26, 1985, written to codefendant Martínez was an appeal. But not only was this against the procedure in the Agreement and that proclaimed by defendants, there was no proof that Mr. Martínez received that letter in a timely manner. Plaintiff states that he went to deliver the letter personally but was turned away. Other than this bald statement, no proof was offered. In addition, the letter does not request an appeal of his dismissal as Accountant I but rather implores Mr. Martínez to "review" Mr. Mercado's case to see if he could be assigned some *other* job.

In short, Mr. Mercado received all the pretermination due-process rights he was entitled to. Accordingly, his claim based on the fourteenth amendment cannot stand.

### CONCLUSION

In view of the above, the complaint filed by Mr. Mercado Vega is hereby DISMISSED with prejudice. Judgment shall be entered accordingly.

IT IS SO ORDERED.