Iris v. RIVERA–FLORES,
Plaintiff, Appellant,

v.

PUERTO RICO TELEPHONE
COMPANY, Defendant,
Appellee.

No. 94–1977.

United States Court of Appeals,
First Circuit.

Heard March 7, 1995.

Decided Sept. 6, 1995.

---

**744**

Harry Anduze Montano, for appellant.

Edgardo Colon Arraras, with whom Ina M. Berlingeri Vincenty and Goldman, Antonetti & Cordova were on brief, for appellee.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Iris Rivera–Flores ("Rivera") challenges certain district court rulings relating to various commonwealth and federal claims against appellee Puerto Rico Telephone Company ("PRTC"), her former employer, for condoning the harassment she experienced at work on account of her visual handicap, and for

terminating her employment. We vacate the district court judgment and remand for retrial.

## I

### BACKGROUND [1]

Rivera began working the night shift for PRTC as a traffic operator in 1984. In January 1986, PRTC acceded to her request for reasonable accommodation of her visual impairment—congenital cataracts in both eyes and secondary angle closure glaucoma— by transferring her to a day-shift position as a service representative. During her four-month tenure as a service representative, Rivera's supervisors and co-workers harassed her by making derogatory remarks about her visual handicap; her supervisors reported her work performance as unsatisfactory; and in April 1986, she was reassigned to her former position as a traffic operator on the night shift.

Rivera's labor union filed a successful grievance in opposition to her reassignment, and in November 1988, Rivera was reinstated, with back pay, as a sales representative on the day shift. Her supervisors resumed their complaints that Rivera's visual problems were adversely affecting her job performance; provided her with inadequate on-the-job training; refused to give her a desk or work assignments for several weeks; brushed aside her repeated requests for reasonable accommodation (e.g., a special magnifying glass to facilitate reading, and overtime compensation for catching up on a preexisting three-month work backlog); and attempted to coerce her into accepting an unfavorable job evaluation. Her day-shift supervisors and co-workers resumed their derogatory comments (e.g., calling her "little blind lady," "mentally retarded," "mutant," cross-eyed, and physically repulsive), and hid or defaced her paperwork.

In April 1989, Rivera reported to the State Insurance Fund ("Fund"), and was diagnosed with, and treated for, an emotional and mental condition attributable to the job-related

1. The district court decision directing judgment as a matter of law is reviewed *de novo. Favorito v. Pannell*, 27 F.3d 716, 719 (1st Cir.1994). The evidence, and all reasonable inferences therefrom, are viewed in the light most favorable to the party opposing judgment. *Id.*

harassment.[2] She filed suit in December 1989 against PRTC in federal district court, seeking compensatory and punitive damages, front and back pay, injunctive relief, prejudgment interest, and attorney fees. When Rivera sought to return to work following her discharge from the Fund in December 1991, PRTC informed her that her position was no longer available because the Puerto Rico workers' compensation statute obligated employers to hold jobs open for only twelve months *after the onset of the disability. See* P.R.Laws Ann. tit. 11, § 7 (1991). PRTC sent its formal termination letter to Rivera on December 14, 1992, without according Rivera a pretermination hearing.

Thereafter, Rivera filed her final amended complaint, which included two federal claims. First, she alleged that PRTC, an instrumentality of the Commonwealth of Puerto Rico, had violated her procedural due process rights by terminating her employment without a pretermination hearing. *See* U.S. Const. amends. V, XIV. Second, she pleaded a Rehabilitation Act claim, based on her termination and on PRTC's negligent condonation of the discriminatory harassment she experienced at the hands of its employees. *See* 29 U.S.C. § 794 (prohibiting discrimination based on handicap by any program "receiving federal financial assistance"), § 794a (prescribing equitable and legal remedies for violation); 42 U.S.C. § 2000d–7 (waiving State's Eleventh Amendment immunity for damages in actions under Rehabilitation Act).

Rivera's claims under commonwealth law alleged that PRTC (1) violated P.R. Const. art. II, § 8 (providing that "[e]very person has the right to the protection of law against abusive attacks on h[er] honor, reputation and private or family life"), (2) violated the Commonwealth's statutory analog to the Federal Rehabilitation Act, P.R.Laws Ann. tit. 1, § 511, and (3) intentionally or negligently inflicted personal injury, *see* P.R.Laws Ann. tit. 31, §§ 5141–5142 (cause of action for damages against employer for injury inflicted by employer and its employees). Rivera demanded jury trial on all claims.

PRTC moved for summary judgment, asserting, *inter alia*, that the district court lacked subject matter jurisdiction over the Rehabilitation Act claim because PRTC's receipt of Federal Emergency Management Agency ("FEMA") disaster funds could not, *as a matter of law*, qualify it as a "program ... receiving federal financial assistance." 29 U.S.C. § 794. The district court disagreed, rejected the jurisdictional challenge, and denied summary judgment. *Rivera–Flores v. PRTC*, 840 F.Supp. 3, 6 (D.P.R. 1993) (Laffitte, J.).

On the first day of trial, after Judge Laffitte unexpectedly recused himself, the parties agreed to proceed with the jury trial before a magistrate judge. When Rivera rested her case, PRTC moved for judgment as a matter of law on the Rehabilitation Act claim, *see* Fed.R.Civ.P. 50(a)(1), on the ground that Rivera had failed to introduce evidence that PRTC had "receiv[ed] federal financial assistance" in the form of FEMA disaster funds. Rivera responded that she did not proffer such evidence, because Judge Laffitte's earlier order denying summary judgment to PRTC conclusively established that the court had subject matter jurisdiction over her Rehabilitation Act claim against PRTC. In the alternative, Rivera requested that she be permitted to reopen her case to present this evidence.

The magistrate judge summarily denied the request to reopen and dismissed the Rehabilitation Act claim, after correctly noting that a denial of summary judgment normally does not settle material factual disputes upon which the plaintiff bears the ultimate burden of proof. The court then decided to retain supplemental jurisdiction over the three commonwealth claims, *see* 28 U.S.C. § 1367, but nevertheless discharged the jury after concluding that Rivera had no independent Seventh Amendment right to jury trial on these commonwealth claims in federal court, *see* U.S. Const. amend. VII, since plaintiffs enjoy

---

**2.** The physicians treating Rivera noted wide fluctuations in the intraocular pressure in her right ("good") eye. In April 1990, she underwent surgery on her right eye, which resulted in a permanent, partial loss of visual acuity. Rivera attributed the increase in intraocular pressure to job-related stress.

**746**

no such parallel right under the Puerto Rico Constitution.

Following a bench trial, the court entered judgment on Rivera's claim for negligent infliction of emotional distress, *see* P.R.Laws Ann. tit. 31, §§ 5141–5142, awarding her $90,000 in damages. The three remaining claims were dismissed. First, the federal procedural due process claim was dismissed on the ground that Puerto Rico law presumes the natural expiration of an employee's "property right" in her employment after one year of continuous disability. *Rivera–Flores v. PRTC*, No. 89–1697, 1994 WL 422314, at *10, 1994 U.S.Dist. LEXIS, at *30 (D.P.R. June 20, 1994) (citing *Carron Lamoutte v. Compania de Turismos*, 92 J.T.S. 27, at 9306 (1992)). Second, the claim asserted under the commonwealth constitution failed for lack of proof of "reputational damage." *Id.* at *8, 1994 U.S.Dist. LEXIS, at *23. Third, the handicap discrimination claim foundered because the 1992 amendment to the Puerto Rico statute which provides a private cause of action for damages is not made applicable to pre–1992 causes of action. *Id.* at *10, 1994 U.S.Dist. LEXIS, at *30 (interpreting P.R.Laws Ann. tit. 1, § 511).

## II

### DISCUSSION

#### A. *Federal Rehabilitation Act Claim*

Rivera focuses first on the dismissal of her Rehabilitation Act claim because she did not introduce evidence that PRTC was a "program ... receiving federal financial assistance." She insists that this question had never been placed in genuine dispute by PRTC, that the pretrial order denying PRTC's summary judgment motion (Laffitte, J.) had established this "jurisdictional" fact, and that she was caught off guard by the magistrate judge's decision to treat Judge Laffitte's pretrial order as non-dispositive. In these circumstances, she suggests, at the very least the court should have allowed her briefly to reopen and introduce the "undisputed" evidence that PRTC received FEMA disaster funds.

■ Trial court rulings on motions to reopen civil cases to permit additional evidence are reviewed for abuse of discretion. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Hibiscus Assocs., Ltd. v. Board of Trustees of the Policemen and Firemen Retirement Sys.*, 50 F.3d 908, 917–18 (11th Cir.1995); *Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1285 (10th Cir.1994); *Bradford Trust Co. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 805 F.2d 49, 52 (2d Cir.1986); *Swartz v. New York Cent. R.R. Co.*, 323 F.2d 713, 714 (7th Cir.1963). While the particular criteria that guide a trial court's decision to reopen are necessarily flexible and case-specific, it is generally understood that a trial court abuses its discretion if its refusal to reopen works an "injustice" in the particular circumstances. *See Gas Ridge, Inc. v. Suburban Agric. Properties, Inc.*, 150 F.2d 363, 366 (5th Cir.1945). Among the material factors which should be assessed by the trial court are whether: (1) the evidence sought to be introduced is especially important and probative; (2) the moving party's explanation for failing to introduce the evidence earlier is *bona fide;* and (3) reopening will cause no undue prejudice to the nonmoving party. *See, e.g., Joseph*, 17 F.3d at 1285; *see generally* 6A James W. Moore, *Moore's Federal Practice* ¶ 59.04[13], at 59–33 (2d ed. 1993).

#### 1. *The "New" Evidence*

■ Trial courts as a rule act within their discretion in refusing to reopen a case where the proffered "new" evidence is insufficiently probative to offset the procedural disruption caused by reopening. *See, e.g., Joseph*, 17 F.3d at 1285 (noting that "new" evidence would have been cumulative); *Thomas v. S.S. Santa Mercedes*, 572 F.2d 1331, 1336 (9th Cir.1978) (affirming denial of motion to reopen where "new" evidence would have provided little additional probative force). In the instant case, however, there can be no question that the proffered "new" evidence was critical to the Rehabilitation Act claim once it became clear that subject matter jurisdiction was contested; it was the *only* evidence on an essential element of the claim. *See, e.g., Nathanson v. Medical College of Pa.*, 926 F.2d 1368, 1380 (3d Cir.1991). Thus,

this factor weighed heavily in favor of allowing the motion to reopen.

### 2. *Bona Fide Explanation*

Trial courts likewise should consider whether the moving party offered a *bona fide* explanation for failing to introduce the evidence before it finally rested its case. *See, e.g., Bradford Trust Co.,* 805 F.2d at 52–53 (upholding denial of motion to reopen after trial court repeatedly warned that movant would need to produce evidence on "key issue"); *Air et Chaleur, S.A. v. Eliot Janeway,* 757 F.2d 489, 495 (2d Cir.1985) (upholding refusal to reopen where trial court forewarned movant that omitted evidence would be essential). Moreover, the courts recognize that it may amount to an abuse of discretion for a trial court to decline to reopen in circumstances where the movant has demonstrated "reasonably genuine surprise." *Id.* There are at least four compelling reasons for finding that the "good faith" factor weighed heavily in favor of allowing the motion to reopen in the instant case.

First, the record bears out the contention that Rivera refrained from introducing the undisputed evidence of PRTC's receipt of FEMA funds, not because she lacked proof but solely because she reasonably understood that the district court's subject matter jurisdiction had been settled *prior to trial.* In the statement of uncontested material facts accompanying its summary judgment motion, for example, PRTC admitted receiving a $9,765 check from FEMA, dated January 10, 1986, "while [Rivera] was working as a Service Representative," as well as other FEMA payments during 1987, 1989 and 1990.

Notwithstanding these undisputed facts, PRTC presented the magistrate judge with two alternative theories for its narrowly focused *legal contention* that the district court lacked subject matter "jurisdiction": (1) FEMA fund recipients are subject to the special anti-discrimination provisions of 44 C.F.R. §§ 7.1 to 7.949 (1994), which do not proscribe *employment* discrimination by the recipient, and therefore PRTC was not subject to the more comprehensive anti-discrimination provisions of the Rehabilitation Act; or (2) the FEMA funds must be shown to have been received during the same time period in which the alleged discriminatory acts against the recipient's employee took place.

Judge Laffitte had rejected both these legal theories prior to trial:

> [PRTC's] arguments do not carry the day. First, *neither party contests the fact* that after various hurricanes and heavy rains in Puerto Rico, PRTC applied for Federal financial assistance to receive reimbursement for expenditures paid to repair the damage caused by the disasters. *Neither party contests the fact* that PRTC either was receiving Federal funding or was awaiting the receipt of funding throughout the period of the alleged discriminatory conduct. *The Court finds* that in the context of the Rehabilitation Act, an employer "receiving Federal financial assistance" includes a qualified applicant who although approved to receive the funds is awaiting the receipt of them. Consequently, because PRTC was either receiving or expecting to receive Federal financial assistance throughout the period pertinent to plaintiff's claim, *the Court finds* that PRTC was "receiving Federal financial assistance" and *is subject* to the Rehabilitation Act for that period of time.

*Rivera–Flores,* 840 F.Supp. at 5 (emphasis added).

Normally, of course, the mere denial of a defendant's summary judgment motion does not relieve a claimant of the burden of introducing evidence at trial on every element essential to her claim, even though the factual predicate was not in genuine dispute at summary judgment. However, Civil Rule 56(d) establishes a procedural mechanism whereby a district court can ensure a more enduring effect for its summary judgment ruling, and, with the acquiescence of the parties, narrow the factual issues for trial:

> If on motion under this rule judgment is not entered upon the whole case or for all relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, *shall if practicable ascertain what materi-*

*al facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts* that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. *Upon the trial of the action the facts so specified shall be deemed established,* and the trial shall be conducted accordingly.

Fed.R.Civ.P. 56(d) (emphasis added).

■ The December 1993 order entered by Judge Laffitte fits well within the spirit, if not the letter, of Rule 56(d). Its language, *see supra,* belies PRTC's main contention that the district court order did not sufficiently *"specif[y]"* the facts that were "without substantial controversy." PRTC counters that an order can have no Rule 56(d) effect unless the court expressly announces its intention to enter a Rule 56(d) order, and then "interrogates" counsel concerning the appropriateness of such relief.

On the contrary, the language of the rule contemplates merely that the court, *inter alia,* "interrogat[e] counsel [to] ascertain what material facts ... are actually and in good faith controverted...." *Id.* Rule 56(d) gives counsel no veto power over the decision to enter such an order. Although it is unquestionably advisable for the court to announce its intention to enter such an order, Rule 56(d) does not make it compulsory.[3] Thus, "interrogation" of counsel is *a* suggested *means* of determining facts not in substantial controversy, where the pleadings and other evidence before the court leave room

for doubt. But it is the *substance* of the order that matters.

Second, in our view Rivera's reliance on the pretrial order seems justified in these circumstances since the fact not in substantial "good faith" controversy did not pertain exclusively to the merits of her claim. Unlike the three other elements of 29 U.S.C. § 794, "receipt of federal funds" also directly implicates the district court's *subject matter jurisdiction* over a Rehabilitation Act claim. *See Bentley v. Cleveland Cty. Bd. of Cty. Comm'rs,* 41 F.3d 600, 603–04 (10th Cir. 1994). Contested factual matters relating to a court's subject matter jurisdiction are properly determined on pretrial motions to dismiss, *see* Fed.R.Civ.P. 12(b)(1); *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (court must assure its jurisdiction before reaching merits of claim), and even where the claim is set for jury trial, the court has great latitude to direct limited discovery and to make such factual findings as are necessary to determine its subject matter jurisdiction. *See Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 1010–11, 91 L.Ed. 1209 (1947); *see also* Fed.R.Civ.P. 12(b)(1). We need express no opinion concerning whether the Rehabilitation Act's jurisdictional element might properly be adjudicated on a Rule 12(b)(1) motion.[4] Rather, we note merely that Rivera in no sense acted unreasonably in treating Judge Laffitte's pretrial order as determinative of the jurisdictional findings therein contained.

Third, the record indicates that PRTC may have engendered further confusion concerning the intended import of Judge Laffitte's pretrial order. In the pretrial order, PRTC represented that Rivera's prima facie case

3. The lone case cited by PRTC for its view—*Audi Vision, Inc. v. RCA Mfg. Co.,* 136 F.2d 621, 625 (2d Cir.1943)—is inapposite. There the court reviewed a partial summary judgment entered on various claims, but counterclaims remained for trial. The appeal was dismissed as interlocutory because the partial summary judgment was not "final." *See* Fed.R.Civ.P. 54(b). The appellate court simply recommended that trial courts alert the parties to the fact that partial summary judgments are subject to further modification as required to avoid "manifest injustice." It did not require that trial courts alert the parties when their pretrial orders result in a partial "adjudication" of less than all material factual issues. *Id.*

4. Rehabilitation Act claims have been dismissed for lack of subject matter jurisdiction *prior to trial. See, e.g., Foss v. City of Chicago,* 640 F.Supp. 1088, 1090 (N.D.Ill.1986) (finding that defendant was not a "program ... receiving Federal financial assistance"), *aff'd,* 817 F.2d 34 (7th Cir.1987). *But cf. Careau Group v. United Farm Workers,* 940 F.2d 1291, 1293 (9th Cir.1991) (noting that, "where jurisdiction is so intertwined with the merits that its resolution depends on a resolution of the merits, 'the trial court should employ the standard applicable to a motion for summary judgment' ") (citation omitted).

required proof of *three* elements, omitting any reference to the *fourth*—the "jurisdictional" element. *See* Pretrial Order, at 13.[5] PRTC also represented that it "[wa]s not a recipient of federal financial assistance *within the meaning of [the Rehabilitation Act]*." Arguably at least, this connoted that PRTC continued to challenge Judge Laffitte's *legal rulings* interpreting the Rehabilitation Act, but that it accepted the fact that proof of receipt of FEMA funds no longer remained in bona fide dispute for trial. Thus, Rivera presented a bona fide explanation for failing to introduce her evidence before resting at trial.

### 3. *Undue Prejudice*

The third factor meriting consideration by the trial court was the degree to which an order allowing Rivera to reopen would prejudice PRTC. *See, e.g., Joseph,* 17 F.3d at 1285. First, we note that the motion to reopen was filed immediately after Rivera rested *her* case, upon learning that PRTC did not share her understanding of Judge Laffitte's pretrial order. *Cf. id.* at 1284 (upholding denial of motion to reopen, and noting logistical unfairness to defendant in allowing plaintiff to present new evidence *after defendant* had rested its case). Presumably, the documentary evidence demonstrating PRTC's receipt of FEMA funds, including a cancelled check attached as an exhibit to PRTC's own Rule 56 statement of undisputed material facts, constituted the only "new" evidence to be introduced. Unlike a reopening to permit extended testimony, *cf. Hibiscus Assocs., Ltd.,* 50 F.3d at 918 (denying motion to reopen, for expert testimony, where evidence was type that could be proved without extensive expert testimony), the introduction of such readily obtainable documentary evidence could have entailed but minimal delay. *Cf. Capital Marine Supply, Inc. v. M/V Roland Thomas,* 719 F.2d 104, 107 (5th Cir.1983) (finding no abuse in granting motion to reopen "where the missing testimony can be made available without undue delay").

In the final analysis, therefore, all three central factors weighed overwhelmingly in favor of reopening, whereas the summary ruling below afforded no apposite rationale for declining to reopen. For these reasons, we conclude that the refusal to reopen, resulting in dismissal of the Rehabilitation Act claim, constituted an abuse of discretion.

### B. *Discharge of Jury*

■ Following dismissal of the Rehabilitation Act claim, the district court discharged the jury, over Rivera's timely objection, and assumed the role of factfinder, on the mistaken theory that Rivera had no right to jury trial on her commonwealth claims. Puerto Rico litigants do have a right to jury trial on their commonwealth claims in federal district court where the court decides, as it did here, to exercise its supplemental jurisdiction. *See* 28 U.S.C. §§ 119, 451; Fed.R.Civ.P. 1 & 38(a). The fact that the Puerto Rico constitution confers no parallel right to jury trial on such claims is immaterial. Thus, the three commonwealth claims must be reinstated and remanded for jury trial as well.

Although in the normal course we would proceed no further, the district court eventually dismissed several other claims on legal grounds presently challenged on appeal. The aborted jury trial in this case lasted several weeks, and a retrial necessarily would entail a further expenditure of considerable judicial resources. In the interests of judicial economy, therefore, we briefly discuss the dispositive legal issues likely to recur on remand.[6]

### C. *Due Process Claim*

The district court dismissed a federal claim alleging that PRTC violated Rivera's due process rights by failing to accord her a pretermination hearing. *See* U.S. Const. amends. V, XIV; *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (holding that state may not discharge public employee, who has prop-

---

**5.** In her jury instruction requests, Rivera likewise listed three Rehabilitation Act claim elements, omitting mention of the "jurisdictional element."

**6.** Of course, our vacation of the district court judgment moots Rivera's appellate challenges to the district court's findings.

erty right in employment position, without benefit of pretermination hearing). The process "due" Rivera is governed by federal law; her property right is defined by commonwealth law. *See Kauffman v. PRTC,* 841 F.2d 1169, 1173 (1st Cir.1988).

The Puerto Rico workers' compensation statute includes what the district court described as a "caducity" provision: employers need hold a disabled worker's position open for only twelve months, after which they are not obligated to reinstate the worker. *See* P.R.Laws. Ann. tit. 11, § 7. The district court ruled that Rivera no longer had a "property right" in her position as service representative because more than twelve months had elapsed between the time her job-related disability began (April 1989) and the time she sought to resume her position in December 1991. We think its ruling is based on an erroneous construction of commonwealth law.

■ The Puerto Rico Supreme Court has delineated the applicable standards. *See, e.g., Carron Lamoutte v. Compania de Turismo del Estado Libre Asociado de Puerto Rico,* 92 J.T.S. 27, at 9603 (1992). A public employee who once acquires a cognizable "property right" in her employment position, and who suffers a work-related injury or accident and reports to the Fund for treatment, has an absolute right to reinstatement to her position once she is discharged from the Fund (i.e., from medical treatment), *provided she seeks reinstatement within twelve months of her injury or accident. Id.* at 9607.[7] If the employee remains under treatment for *more* than twelve months, however, the employer acquires the right to dismiss her on the ground that she is no longer physically or mentally capable of performing her former work. *Id.* at 9608. Thus, it is merely the employee's absolute right not to be terminated on account of her disability, rather than her property interest in her employment position, which lapses under the one-year workers' compensation "caducity" provision.

■ Once the Commonwealth confers a "property interest" in employment, it cannot take the position away without abiding by the dictates of procedural due process. *Id.* at 9608–09. Twelve months after an employee's accident or injury an employer wishing to discharge a disabled employee must notify her of its intention not to keep her position open for reinstatement. Thus, in *Carron Lamoutte, id.,* where the plaintiff-employee had exceeded the twelve-month, post-injury grace period, the employer was still obligated to provide advance notice of dismissal and an informal pretermination hearing, at which she would be given the opportunity to establish, *inter alia,* that (i) she had not been under post-injury treatment for more than twelve months;[8] or (ii) she was no longer

---

**7.** PRTC urges affirmance on an alternate ground *not* presented to the district court; viz., Rivera's "property right" in her position, unlike that of PRTC's managerial employees, was not defined by the commonwealth statute, Personnel Act, P.R.Laws. Ann. tit. 3, §§ 1301 *et seq.* (defining "merit principle" positions), but only under the collective bargaining agreement between PRTC and her union. *Mercado Vega v. Martinez,* 692 F.Supp. 36 (D.P.R.1988). PRTC therefore suggests that the "due process" cases cited by Rivera are inapposite. We do not agree.

State statutory law is not the *sole* source of "property" interests in employment. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (property interests are created "from an independent source *such as state law*") (emphasis added). For procedural due process purposes, it is well settled that an employee's "property right" in her job may be established *by contract. Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972) (noting

that " 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms [but] [r]ather, 'property' denotes a broad range of interests that are secured 'by existing rules or understandings,' " including express or implied contracts) (citations omitted). Even the case cited by PRTC so recognized. *See Mercado Vega,* 692 F.Supp. at 42 (noting that *either* the Personnel Act *or a collective bargaining agreement* may give rise to a "property interest" which would entitle plaintiff to "some kind of hearing" consistent with the dictates of procedural due process).

**8.** The other case relied on by the district court in dismissing the due process claim is not to the contrary. In *Torres Gonzalez v. Star Kist Caribe, Inc.,* 94 J.T.S. 5 (1994), the court simply held that the 12–month term during which an employee retains an absolute right to reinstatement is not tolled by those temporary discharges from medical treatment which simply allow the employee to return to work for a brief period of time. The *Gonzalez* decision did not involve the

suffering a disability which would prevent her from returning to her former position. *Id.; see also Laborde–Garcia v. PRTC,* 993 F.2d 265, 267–68 (1st Cir.1993). Further, the employer is required to review the employee's medical records, and, after the pretermination hearing, to make express factual findings on *both* these factors. *Carron Lamoutte,* 92 J.T.S. 27, at 9610. Accordingly, the district court erred in dismissing Rivera's due process claim on the ground that her right to a pretermination hearing lapsed *automatically* in April 1990.

## D. Commonwealth Constitutional Claim

Rivera also challenges the dismissal of her claim for damages under P.R. Const. art. II, §§ 1, 8. Section 1 provides that "[t]he dignity of the human being is inviolable." Section 8 provides that "[e]very person has the right to the protection of law against abusive attacks on his honor, reputation or family life."[9] Rivera essentially argues that the evidence that her co-workers harassed and insulted her was sufficient to demonstrate affronts to her "dignity" as a human being, in violation of her Section 1 rights.

The problem with Rivera's contention is fundamental: at no point prior to this appeal has she alleged that PRTC violated Section 1. In her amended complaint she stated that the court had jurisdiction over "all claims arising out of violations to *Section 8,* Article II of the Constitution of the Commonwealth of Puerto Rico." (Emphasis added.) In the pretrial order, Rivera did not alter this designation, even when PRTC specifically characterized it as a Section 8 claim. Thus, it is clear that the district court simply dismissed the Section 8 claim for lack of proof, making no mention of any Section 1 claim.[10] Finally, on appeal Rivera does not appear to contest that she failed, as a matter of law, to prove her Section 8 claim since her co-worker's insults, based primarily on her physical handicap, were not probative of damage to her reputation or honor.[11]

## E. Handicap Discrimination Claim

Finally, Rivera challenges the dismissal of her commonwealth claim based on handicap discrimination under Law 53 (codified at P.R.Laws Ann. tit. 1, § 511 (1992)).

In 1959, the Puerto Rico Legislature enacted Law 100 (codified at P.R. Laws Ann. tit. 29, §§ 146, 147, 147a, 148, 149), which prohibited employment discrimination based on age, gender, race, color, social or national origin, social condition, or religion, and permitted persons who were subjected to such discrimination to bring tort claims for damages. However, Law 100 made no mention of employment discrimination based on physical or mental handicap. In 1985, the Legislature enacted Law 44, which prohibited all public or private institutions from engaging in handicap discrimination in employment, but limited the enforcement of the prohibition to executive branch agencies. In 1992, the Legislature enacted Law 53 (codified at P.R.Laws Ann. tit. 1, § 511 (1992)), which for the first time provided that handicap discrimination claimants would have the same private remedies as claimants under Law 100, including a right of action for damages. The district court held, however, that Law 53 contained no provision permitting victims of handicap discrimination to sue for damages until 1992, that PRTC's alleged discriminatory actions antedated the 1992 amendment, and that section 511 could not be applied retroactively to Rivera's claim.

In Puerto Rico, statutes generally are presumed to have prospective effect only, unless the statute expressly or by inescapable inference demonstrates a contrary legislative intent. *See* P.R.Laws. Ann. tit. 31, § 3 (no retroactive application of statutes absent

---

procedural due process argument settled earlier in *Carron Lamoutte.*

9. The rights safeguarded by these provisions of the commonwealth constitution operate, *ex proprio vigore,* to make violators amenable to tort-damage awards. *See Arroyo v. Rattan Specialties,* 17 O.T.S. 43, 72 (1986).

10. Nor did Rivera file a motion for reconsideration alerting the court to her Section 1 claim.

11. We express no opinion on whether Rivera should be allowed on remand to amend her pleadings to permit a Section 1 claim to be tried to the jury. *See* Fed.R.Civ.P. 15 (amendment of pleadings).

express retroactivity provision); *Velez Rebroyas v. Secretary of Justice*, 115 D.P.R. 533 (1984), 15 O.T.S. 700, 712 (1984); *accord Landgraf v. USI Film Prods.*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (finding that 1990 Civil Rights Act amendments did not overcome the presumption of nonretroactivity). Rivera points to no language in Law 53 which would overcome the presumption of nonretroactivity, nor have we found any evidence of such an intent in the legislative history.[12]

Rivera argues instead that we should follow the analogous reasoning of courts which have held that the 1987 Civil Rights Restoration Act is retroactive. *See, e.g., Lussier v. Dugger*, 904 F.2d 661, 665–65 (11th Cir.1990); *Ayers v. Allain*, 893 F.2d 732, 754–56 (5th Cir.), *withdrawn and vacated on other grounds*, 914 F.2d 676 (1990). These cases are inapposite, however, because that statute *expressly* provided that the amendments were intended to overturn intervening United States Supreme Court decisions, so as to comport with Congress's original intent. Law 53 does not suggest in any way that the Legislature intended in 1959 that victims of handicap discrimination were protected by Law 100, nor that it intended in 1985 that such victims would have a private cause of action for damages under Law 44. Thus, Law 53 is inapposite to the *explicit* "clarification" in the 1987 Restoration Act.

Finally, Rivera contends that even if Law 53 is not retroactive, handicap discrimination claimants still had a vehicle for recovering compensatory damages before August 1992. While Law 44, enacted in 1985, did not make handicap discrimination an injury redressable in a private action for damages, the statute clearly designated this type of discriminatory conduct a "culpable act," and a "culpable act" resulting in injury can serve as the predicate for a suit for damages under P.R.Laws Ann. tit. 31, §§ 5141–5142. Even

if Rivera's reasoning were arguable, the matter is moot. Her claim under §§ 5141–5142 was *not dismissed* by the court; it formed the legal basis for the $90,000 damages award. On remand, that claim too must be presented to the jury.[13]

**The district court judgment is vacated and the case is remanded for further proceedings consistent with this opinion.**

---

**12.** Law 53 establishes an effective date of August 30, 1992, a provision which would seem superfluous were Law 53 intended to have retroactive effect to then-pending actions.

**13.** We note a proviso which must be addressed on remand. It is not entirely clear that the application of Law 53 to Rivera's complaint would be fully retroactive in effect. Law 53

expressly provided that it would take effect on August 30, 1992. PRTC's last alleged act of discrimination against Rivera occurred on December 14, 1992, when it sent its final letter of termination to Rivera. Thus, if the date of Rivera's formal termination were fixed on that date, damages attributable to the termination might be actionable under Law 44.