SCHS ASSOCIATES, a Rhode Island Limited Partnership, Plaintiff,

v.

Andrew CUOMO, as Secretary of the United States Department of Housing and Urban Development, The United States Department of Housing and Urban Development, Steven O'Rourke, as Executive Director of the Providence Housing Authority, and the Providence Housing Authority, Defendants,

SCHS Associates, a Rhode Island Limited Partnership and Gatsby Housing Associates, Inc., Plaintiffs,

v.

Andrew Cuomo, as Secretary of the United States Department of Housing and Urban Development and the United States Department of Housing and Urban Development, Defendants.

Nos. 97–368L, 98–193L.

United States District Court, D. Rhode Island.

April 12, 2001.

Alden C. Harrington, Boyajian, Harrington & Richardson, Providence, RI, John M. Bradham, Richard M. Price, Nixon Peabody LLP, Washington, DC, for Plaintiffs.

Michael P. Iannotti, Anthony C. DiGioia, Assistant U.S. Attorneys, Providence, RI, Stephen J. Reid, Jr., Staci L. Sawyer, Blish & Cavanagh, Providence, RI, Mark C. Ouellet, Cranston, RI, for Defendants.

## DECISION AND ORDER

Lagueux, District Judge.

The matters before the Court are C.A. No. 97–368L ("the 1997 lawsuit") and C.A.

No. 98–193L ("the 1998 lawsuit"). The 1997 lawsuit is before the Court on cross motions for summary judgment, while the 1998 lawsuit is before the Court on defendants' motion to dismiss for failure to state a claim. These matters have not been formally consolidated; however, they both relate to a reduction in contract rents for the Barbara Jordan I Apartments ("BJI"), a scattered-site Section 8 housing development located in Providence, Rhode Island. The Court's opinion will address each matter in turn, starting with the cross motions for summary judgment.

Plaintiff SCHS Associates ("SCHS") is the owner and operator of BJI. Plaintiff moves for partial summary judgment on Count One and Count Two of its First Amended Complaint pursuant to Federal Rule of Civil Procedure 56(d).[1] In Count One, SCHS alleges that defendants Andrew Cuomo, as Secretary of the United States Department of Housing and Urban Development, and the United States Department of Housing and Urban Development (collectively, "the HUD defendants") violated the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* by unilaterally reducing the contract rents for BJI in violation of Section 142(d) of the Housing and Community Development Act of 1987, 42 U.S.C. § 1437f(c)(2)(C)(1994). In Count II, SCHS requests a declaratory judgment to the effect that a unilateral reduction in contract rents violates 42 U.S.C. § 1437f(c)(2)(C). The HUD defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the reasons set forth below, the Court denies plaintiff's motion for partial summary judgment. The Court also denies the HUD defendants' motion for summary judgment.

In the 1998 lawsuit, SCHS and Gatsby Housing Associates, Inc. ("Gatsby"), the property manager for BJI, seek a declaratory judgment that attorneys' fees incurred in the 1997 lawsuit are appropriate project expenses that may be paid from BJI's contract rents. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the HUD defendants move to dismiss plaintiffs' complaint for failure to state a claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 (1994). For the reasons that follow, this Court grants defendants' motion to dismiss.

## I. Background and Procedural History

The following facts are not in dispute unless otherwise noted. SCHS acquired BJI, a 193 unit multifamily development located in Providence, Rhode Island, in 1983. BJI is comprised of a series of one-, two-, and three-unit homes scattered throughout a one-mile area. The housing development is insured by HUD under the National Housing Act, 12 U.S.C. § 1715l (d)(4) (1994), and is subsidized through the "Substantial Rehabilitation" program administered under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f ("Section 8").

Section 8 was enacted for the purpose of aiding low-income families in obtaining decent, safe and affordable housing, and to promote economically mixed housing. Under the Substantial Rehabilitation program, the owner of an assisted unit receives subsidies in the form of housing assistance payments. Housing assistance payments are the difference between the contract rent, which is the total amount of rent payable for each unit, and the tenant rent, which is the amount payable by the

---

1. In its motion for partial summary judgment, plaintiff uses the term "defendants" without distinguishing between the HUD defendants and the PHA defendants. The Court notes that the PHA defendants are only nominal parties to this lawsuit, as the PHA merely acts as the conduit for the payment of BJI's contract rents from HUD.

tenant. *See* 42 U.S.C. § 1437a(a) (1994); 24 C.F.R. § 881.201 (2000)("Contract rent" and "Tenant rent" defined).

SCHS receives its housing assistance payments from HUD via the Providence Housing Authority ("PHA"). HUD and the PHA entered into an Annual Contributions Contract, wherein HUD promised to provide the PHA with the necessary funds to make housing assistance payments to SCHS and the PHA agreed to serve as the contract administrator for BJI. SCHS and the PHA entered into a Housing Assistance Payments Contract ("HAP Contract"), which became effective on July 1, 1984. HUD executed the HAP Contract as an approving party. Under the HAP Contract, the PHA agreed to provide rental subsidies in return for SCHS's promise to provide "decent, safe and sanitary" housing to eligible families. In addition, HUD and SCHS entered into a Regulatory Agreement which provides that the approved rent for each Section 8 unit shall be adjusted in accordance with the HAP Contract.

The HAP Contract designates BJI as a Substantial Rehabilitation project subject to 24 C.F.R. Part 881. The HAP Contract also establishes the maximum amount of the housing assistance payments and provides that contract rents may be adjusted annually. This provision, entitled "Rent Adjustments," provides in pertinent part:

(a) *Funding of Adjustments.* Housing assistance payments will be made in amounts commensurate with Contract Rent adjustments under this section up to the maximum amount authorized under section 2.3(a) of this Contract.

(b) *Annual Adjustments.*

(1) Upon request from the Owner to the [contract administrator], Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 C.F.R. 888 and this Contract. See, however, paragraph (d).

\* \* \* \* \* \*

(3) Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the annual adjustment result in Contract Rents less than the Contract Rents on the effective date of the Contract.

(c) *Special Additional Adjustments.* Special additional adjustments shall be granted, when approved by HUD, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, assessments, and utilities not covered by regulated rates. The Owner must demonstrate that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by annual adjustments. The Owner shall submit to HUD supporting data, financial statements and certifications which clearly support the increase. See, however, paragraph (d).

(d) *Overall Limitation.* Notwithstanding any other provision of this Contract, adjustments after Contract execution or cost certification, where applicable, shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by HUD; except to the extent that the differences existed with respect to the Contract Rents set at Contract execution or cost certification, where applicable.

HAP Contract, ¶ 2.7.

Originally, the contract rents for BJI were adjusted each year through application of the annual adjustment factor ("AAF") pursuant to HUD regulations at 24 C.F.R. Part 888 and 24 C.F.R.

§ 881.609 (1980). The regulations were later revised to incorporate by reference, at 24 C.F.R. § 881.609, the regulations at 24 C.F.R. § 880.609 (2000), which contain the same requirements as originally stated in 24 C.F.R. § 881.609. 24 C.F.R. § 880.609 provides:

Adjustment of contract rents.

(a) *Automatic annual adjustment of Contract Rents.*

Upon request from the owner to the contract administrator, contract rents will be adjusted on the anniversary date of the contract in accordance with 24 CFR part 888.

(b) *Special additional adjustments.*

For all projects, special additional adjustments will be granted, to the extent determined necessary by HUD ... to reflect increases in the actual and necessary expenses of owning and maintaining the assisted units which have resulted from substantial general increases in real property taxes, assessments, utility rates, and utilities not covered by regulated rates, and which are not adequately compensated for by annual adjustments under paragraph (a) of this section. The owner must submit to the contract administrator required supporting data, financial statements and certifications.

(c) *Overall limitation.*

Any adjustments of contract rents for a unit after Contract execution or cost certification, where applicable, must not result in material differences between the rents charged for assisted units and comparable unassisted units except to the extent that the differences existed with respect to the contract rents set at Contract execution or cost certification, where applicable.

*Id.*

On December 23, 1994, Luisa G. Osborne, the Director of the Multifamily Division at the Rhode Island State Office of HUD ("RISO"), sent a memorandum to Helen Dunlap, Deputy Assistant Secretary for Multifamily Housing Programs at HUD Headquarters in Washington, D.C., requesting approval to convert the method of adjusting contract rents for BJI from the AAF method to a budget-based method. Among the reasons stated in Ms. Osborne's memorandum for the need to convert to the budget-based approach was that "the real estate experiences abnormally high costs in operation. The array and amount of expenses cannot be adequately compensated for by the current rental determination mechanism."

Approval for the conversion to the budget-based method was granted by memorandum dated January 25, 1995, from Albert B. Sullivan, Director of the Office of Multifamily Housing Management at HUD Headquarters in Washington, D.C. Sullivan's memorandum noted that conversion to the budget-based method "appears to be the only present alternative available to protect the residents." The letter of approval included two conditions relevant to the modification of contract rents. First, "[t]he owner must agree to modify the HAP Contract and the Regulatory Agreement, as necessary, to reduce the currently approved distributions levels." Second, "[t]he owner must agree that at the time of any HAP contract expiration/renewal: ... [t]hat the method of rent may be changed unilaterally by HUD and that the owner will abide by HUD's decision and required change at that time."

Subsequently, the HAP Contract between SCHS and the PHA and the Regulatory Agreement between SCHS and HUD were amended to incorporate the conversion to the budget-based method. Under the Amended HAP Contract, SCHS submits an annual budget to HUD which may contain a contract rent increase application. The Secretary must process the

application and approve or deny the contract rent increase within thirty days.

Interestingly, neither the Amended HAP Contract nor the Amended Regulatory Agreement include the requirements stated in Sullivan's memorandum. The sole reference in the Amended HAP Contract to a change in the methodology used to calculate rents provides that:

> The Secretary may, at its discretion, or the PHA may, with the Secretary's approval, adjust, revise, or change, the method upon which contract rent is calculated or adjusted; provided that said adjustment, revision or change does not result in a reduction of contract rents approved, beyond what is needed to pay project expenses (including debt service) and six per centum distribution to Owner. . . .

Amended HAP Contract, ¶ 7. Likewise, the Amended Regulatory Agreement simply states that "[t]he approved rent for each Section 8 unit shall be adjusted in accordance with the terms of the Housing Assistance Payments Contract, as amended." Amended Regulatory Agreement, ¶ 2.

On May 29, 1996, RISO approved the 1996 budget and rent schedule for BJI. Using the budget-based method, the 1996 budget established a yearly contract rent potential of $4,505,760.00. On May 16, 1997, HUD notified SCHS that BJI's budget was being reduced to a yearly contract rent potential of $2,472,742.00. SCHS submitted its 1997 annual budget for $4,931,820.00 to RISO for review and approval on May 27, 1997. Thirty days later, RISO denied SCHS's 1997 budget request, but set SCHS's budget at $2,695,626.00, a slight increase over the amount originally set in HUD's May 16, 1997 letter.

After receiving notification that BJI's budget was being reduced, SCHS filed this lawsuit. Count One of plaintiff's First Amended Complaint alleges that HUD's unilateral reduction of the 1997 contract rents violates the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, while Count Two seeks a declaratory judgment that the reduction of the 1997 contract rents violates HUD regulations and Section 142(d) of the Housing and Community Development Act of 1987.[2] That section provides that "[t]he Secretary may not reduce the contract rents in effect on or after April 15, 1987, for newly constructed, substantially rehabilitated, or moderately rehabilitated projects assisted under this section ... unless the project has been refinanced in a manner that reduces the periodic payments to the owner." 42 U.S.C. § 1437f(c)(2)(C).

Subsequently, SCHS moved for a preliminary injunction to prohibit the HUD defendants from implementing the rent reduction. Prior to this hearing, Albert B. Sullivan sent an e-mail to Casimir Kolaski, Acting Director of Multifamily Housing at RISO, directing that the contract rents for BJI should be adjusted by the AAF and not the budget-based method. On October 20, 1997, RISO notified the PHA that the AAF method should be applied to BJI.

The hearing on the preliminary injunction was held from October 22–24, 1997. This Court granted a preliminary injunction against the HUD defendants, entering an order to that effect on November 3, 1997. A preliminary injunction was not entered directly against the PHA because it merely passes through to SCHS the amounts due from HUD. Accordingly, the reversion to AAF rents was not imple-

---

**2.** Count Three and Count Four of plaintiff's First Amended Complaint concern actions taken with respect to SCHS's Reserve account. Presently, the Court need not concern itself with these claims, as plaintiff's motion for partial summary judgment relates only to Count One and Count Two.

mented, and payments to SCHS for BJI have continued in the amounts set by the 1996 budget.

Thereafter, SCHS moved for partial summary judgment on Count One and Count Two of its First Amended Complaint. The HUD defendants and the PHA defendants both filed objections to plaintiff's motion for partial summary judgment. The HUD defendants also filed a motion for summary judgment.

On April 8, 1998, SCHS and Gatsby filed the 1998 lawsuit against the HUD defendants, seeking a declaratory judgment that SCHS may pay reasonable attorneys' fees and expenses incurred in the 1997 lawsuit from contract rents, and also seeking reasonable attorneys' fees and costs for the 1998 lawsuit pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (1994). The HUD defendants filed a motion to dismiss the 1998 lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(6).

In April of 1998, this Court entered a stay of these civil proceedings because of a pending related criminal investigation of plaintiff and its chief executive officer, Lloyd Griffin. In March of 2000, SCHS moved to dissolve the stay. The stay was lifted on March 30, 2000 because Griffin had died and the U.S. Attorney's office in Rhode Island indicated that it was not pursuing the criminal inquiry any further. Thus, the Court scheduled a hearing on SCHS's motion for partial summary judgment and the HUD defendants' motion for summary judgment and motion to dismiss the 1998 lawsuit. On June 21, 2000, the Court heard the cross motions for summary judgment, as well as the HUD defendants' motion to dismiss the 1998 lawsuit and the matter was taken under advisement. The motions are now in order for decision.

## II. Cross Motions for Summary Judgment

### A. Legal Standard

SCHS moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(d). A motion for partial summary judgment is separate and distinct from a motion for summary judgment under Rule 56(c). Rule 56(d) provides that when "judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary," the court may "ascertain what material facts are actually and in good faith controverted." Fed.R.Civ.P. 56(d). Based on this inquiry, the court may issue an order stating what facts are not in substantial controversy and "directing such further proceedings in the action as are just." *Id.* Thus, Rule 56(d) "arms the court with a tool to 'narrow the factual issues for trial.'" *Rhode Island Charities Trust v. Engelhard Corp.*, 109 F.Supp.2d 66, 72 (D.R.I.2000)(quoting *Rivera–Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 747 (1st Cir.1995)).

The standard for ruling on a Rule 56(d) motion is identical to the standard used for a Rule 56(c) motion. *See Rhode Island Charities Trust*, 109 F.Supp.2d at 72. Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Id.* Thus, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents*

*Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

In determining whether summary judgment is appropriate, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.,* 133 F.3d 103, 106 (1st Cir.1997). The coincidence that both parties move simultaneously for summary judgment does not relax the standard under Rule 56. *See Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996). Barring special circumstances, the court must consider each motion separately, drawing inferences against each movant in turn. *See id.*

Summary judgment is appropriate only where there is no dispute as to any material fact and only questions of law remain. *See id.* A grant of summary judgment "is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.,* 777 F.Supp. 167, 169 (D.R.I.1991). In addition, the moving party bears the burden of showing that no evidence supports the nonmoving party's position. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Discussion

██ The issue to be decided in this case is whether the rent-reduction bar provision of 42 U.S.C. § 1437f(c)(2)(C) prohibits HUD from unilaterally reducing BJI's contract rents. That provision states that "[t]he Secretary may not reduce contract rents in effect on or after April 15, 1987, for newly constructed, substantially reha-

bilitated, or moderately rehabilitated projects assisted under this section ... unless the project has been refinanced in a manner that reduces the periodic payments by the owner." 42 U.S.C. § 1437f(c)(2)(C).

SCHS argues that the rent-reduction bar provision unequivocally prohibits HUD from unilaterally reducing the contract rents for BJI under any set of circumstances. In support of this argument, SCHS cites several cases which have held that unilateral reductions in contract rents are flatly prohibited by the rent-reduction bar. *See e.g., Terrace Hous. Assocs., Ltd. v. Cisneros,* 32 F.3d 461, 463 (10th Cir. 1994)(rent-reduction bar prohibits all reductions of contract rents); *Foxglenn Investors Ltd. P'ship v. Cisneros,* 35 F.3d 947 (4th Cir.1994)(the language of the rent-reduction bar eliminates HUD's authority to implement rent rollbacks unless the owner's periodic payments have been reduced through refinancing); *Atlantic Terrace Ltd. P'ship v. Cisneros,* 1994 WL 248239 (D.D.C.)(the rent-reduction bar clearly prohibits HUD from reducing Section 8 contract rents).

The HUD defendants respond by arguing that the rent-reduction bar does not prevent HUD from unilaterally reducing rents that were set illegally or without proper authorization. In support of their argument, the HUD defendants cite *Melrose Assocs., L.P. v. United States,* 43 Fed. Cl. 124 (Fed.Cl.1999), *aff'd, Melrose Assocs., L.P. v. United States,* No. 00–5022, 2001 WL 125904 (Fed.Cir. Feb.12, 2001).

The *Melrose* case is similar to the case at bar in several respects. Like BJI, the Melrose Apartments are a Substantial Rehabilitation project located in Providence, Rhode Island. The method of calculating contract rents for the Melrose Apartments was converted from the AAF method to the budget-based method in 1996. In May of 1997, HUD instructed RISO to rescind

the conversion and return the Melrose Apartments to the AAF method. Thereafter, Melrose Associates, L.P., the owner of the Melrose Apartments, filed a claim for breach of contract in the Federal Court of Claims.[3] The United States filed a counterclaim for recovery of excessive rent subsidies paid to Melrose, arguing that the conversion to budget-based rents was unauthorized.

The *Melrose* Court determined that a waiver is required to convert a Substantial Rehabilitation project from the AAF method to the budget-based method of calculating contract rents, and held that the conversion to the budget-based methodology was not completed with the proper authorization, resulting in an illegal agreement. *See Melrose,* 43 Fed. Cl. at 144–45. The *Melrose* Court went on to hold that the rent-reduction bar does not preclude HUD from rescinding an unlawful rent increase. *See id.* at 141.

Although SCHS concedes that there are some similarities between the present case and *Melrose,* it argues that the *Melrose* decision is both legally flawed and factually distinguishable. First, SCHS contends that no waiver was required to convert BJI to the budget-based method because the regulations applicable to Substantial Rehabilitation projects do not mandate use of the AAF method. Instead, the regulations simply dictate how AAF rents will be calculated if they are used. Second, SCHS argues that a waiver was granted in accordance with 42 U.S.C. § 3535(q), or, in the alternative, argues that the conversion to the budget-based method was ratified by the Secretary.

As is evident from the preceding discussion, a significant portion of this dispute centers on whether or not certain statutes and regulations apply under the particular circumstances of this case. Thus, this Court will begin its task by sifting through the statutory provisions and regulations that the parties have cited.

The first issue to be decided in this case is whether the conversion from the AAF method to the budget-based method required a waiver of HUD regulations. Pursuant to 42 U.S.C. § 3535(q) (1994), the authority to grant a waiver of HUD regulations is vested solely in the Secretary and certain persons to whom the Secretary has delegated the authority to grant a waiver. This authority may only be delegated to "an individual of Assistant Secretary rank or equivalent rank, who is authorized to issue the regulation to be waived." *Id.* at § 3535(q)(2).

The BJI Apartments are designated as a Substantial Rehabilitation project, and are governed by the regulations found at 24 C.F.R. § 881 *et seq.* Regulations pertaining to adjustment of contract rents for Substantial Rehabilitation projects are found at 24 C.F.R. §§ 880.609, 881.601, and Part 888. Specifically, these regulations provide that contract rents for Substantial Rehabilitation projects may be adjusted through application of the AAF.

The HUD defendants argue that these regulations mandate the manner in which contract rents for a Substantial Rehabilitation project may be adjusted. Thus, adjusting contract rents by any method other than application of the AAF, including the budget-based method, requires a waiver in

---

**3.** Pursuant to the Tucker Act, 28 U.S.C. § 1491 (1994), the United States Court of Federal Claims has exclusive jurisdiction over contract claims seeking money damages in excess of $10,000.00 from the United States. However, district courts retain jurisdiction over cases where the plaintiff seeks prospective relief, such as declaratory and injunctive relief, rather than money damages. *See Bowen v. Massachusetts,* 487 U.S. 879, 904–906, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

accordance with 42 U.S.C. § 3535(q). Plaintiff disagrees, claiming that the regulations pertaining to AAF adjustments only apply when contract rents are adjusted by applying the AAF, but do not mandate the exclusive method for adjusting contract rents under the Substantial Rehabilitation program.

. The United States Supreme Court has stated that an agency's interpretation of its own regulations is controlling unless the interpretation is plainly erroneous or inconsistent with the regulations. *See United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). It is HUD's position that application of the AAF is the exclusive method authorized by the regulations for adjusting the contract rents of a Substantial Rehabilitation project. HUD's interpretation is neither clearly erroneous nor inconsistent with the regulations, which state that contract rents for Substantial Rehabilitation projects may be adjusted by application of the AAF and do not mention any other method of adjusting contract rents. Therefore, this Court must afford HUD's interpretation of its administrative regulations the controlling weight that it is due. Accordingly, it is the determination of the Court that conversion from use of the AAF to a budget-based method required a waiver from the Secretary or his designee in accordance with 42 U.S.C. § 3535(q).

Independent of HUD's interpretation of the regulations, the HAP Contract between SCHS and the PHA supports the Court's conclusion that a waiver of the regulations was required. The HAP Contract states that BJI is subject to Part 881 of the regulations, and provides for adjustment of contract rents through application of the AAF. It is apparent from the terms of the HAP Contract that application of the AAF was the chosen method for adjustment of contract rents for BJI. Thus, any departure from the method of adjusting contract rents as described in the HAP Contract would require a waiver of the regulations.

■ Having determined that a waiver of the regulations was required, the Court must now turn its attention to the question of whether or not a waiver was in fact granted by the Secretary or his designee in accordance with 42 U.S.C. § 3535(q).

The undisputed facts of this case establish that a request for conversion to the budget-based approach was sent to Helen Dunlap, the Deputy Assistant Secretary for Multifamily Housing Programs at HUD Headquarters in Washington, D.C., from Luisa G. Osborne, the Director of the Multifamily Division at RISO. Approval for the conversion came in the form of a memorandum from Albert B. Sullivan, the Director of the Office of Multifamily Housing Management at HUD Headquarters. In April of 1995, the HAP Contract between SCHS and the PHA (with HUD as an executing party), and the Regulatory Agreement between SCHS and HUD were amended to incorporate the conversion to the budget-based method. Thereafter, SCHS received contract rents calculated under the budget-based method until July of 1997, when HUD notified SCHS that it was reducing BJI's budget.

Plaintiff argues that these actions demonstrate that the Secretary granted a regulatory waiver and approved the conversion. In addition, plaintiff has submitted a document that demonstrates that the Secretary did, in fact, grant the waiver. In 1995, SCHS filed suit for declaratory and injunctive relief, seeking to prevent Henry Cisneros (then the Secretary of HUD) and HUD from withholding or delaying payment of rent subsidies owed to SCHS for BJI's 1995 contract rents calculated under the budget-based method. Defendants

filed a motion to dismiss.[4] In their brief, defendants claimed that dismissal should be granted because "[t]he Secretary had approved the conversion to a mutually agreed upon method for calculating the rent subsidies to be paid to SCHS and had initiated the transfer of funds...." Mem. Supp. Def's Mot. Dismiss, p. 2. Defendants further stated that "the Secretary has not only approved the change from AAF to budget based methodology in calculating rent increases, but has already approved the new rent increases for the Barbara Jordan I Apartments." *Id.* at p. 8.

The HUD defendants dispute plaintiff's contention that the waiver was granted by the Secretary. They posit that the conversion to budget-based rents was granted by Albert B. Sullivan, who did not have the authority to grant a waiver of the regulations pursuant to 42 U.S.C. § 3535(q). As stated previously, a waiver may only be granted by the Secretary, or an individual who holds a position comparable to the rank of Assistant Secretary to whom the Secretary has delegated the authority to grant such a waiver.

The HUD defendants submitted the declaration of Nicolas T. Retsinas, the Assistant Secretary for Housing Federal Housing Commissioner. Among other things, Mr. Retsinas is responsible for the administration of the Section 8 Housing Assistance Payments Program for Substantial Rehabilitation. In his declaration, Retsinas states that when the Secretary, the Deputy Secretary, and Assistant Secretary for Housing–Federal Housing Commissioner have concurrent authority to waive a regulation, it is the policy of HUD that the decision to approve such a waiver is made by the Assistant Secretary for Housing–Federal Housing Commissioner. *See* Decl. of Nicolas T. Retsinas, ¶ 11. Retsinas avers that he "did not waive, make an exception to, or otherwise excuse compliance with [the applicable regulations] ... encourage, review, concur in, approve, or have any other involvement in, the purported conversion of the method of adjusting rents." *Id.* at ¶¶ 12–13. Retsinas also states that he did not ratify the actions of HUD officials taken in connection with the conversion from AAF rents to budget-based rents. *See id.* at ¶ 13. Furthermore, Retsinas states that he is unaware of any instance in which the Secretary or Deputy Secretary waived the applicable regulations. *See id.* at ¶ 11.

The HUD defendants also submitted the affidavit of Albert B. Sullivan. Sullivan states that his office processed the request submitted by RISO to convert BJI to the budget-based methodology. *See* Aff. Albert B. Sullivan, ¶¶ 4–5. At the time, Sullivan assumed that BJI was assisted under the Loan Management Set Aside Program ("LMSA"). *See id.* at ¶ 5. The regulations pertaining to LMSA projects permit rent adjustments under the budget-based formula without requiring a regulatory waiver. Sullivan also states that he has no personal knowledge of any waiver being granted by the Secretary, Deputy Secretary, or Assistant Secretary for Housing Federal Housing Commissioner. *See id.* at ¶ 6.

SCHS and the HUD defendants have each offered the aforesaid evidence to demonstrate that a regulatory waiver was or was not granted. Viewing the evidence in the light most favorable to the HUD defendants, a reasonable factfinder could conclude that the Secretary did not grant a waiver, nor did any other HUD official authorized to issue a waiver of the regulations. However, viewing the evidence in

---

4. The case, *SCHS Associates v. Cisneros,* C.A. No. 95–220T, D.R.I., was filed in the United States District Court for the District of Rhode Island. The parties ultimately settled the case; consequently, there was no ruling on defendant's motion to dismiss.

the light most favorable to plaintiff, a reasonable factfinder could decide that a waiver was granted by the Secretary or an empowered designee. The credibility of the HUD officials is clearly in issue here. Therefore, there is a genuine issue of material fact with respect to whether or not a waiver of the regulations was granted.

■ At the hearing on the cross motions for summary judgment, SCHS raised the argument that the conversion to the budget-based method is valid even if there was no regulatory waiver because the conversion has since been ratified by the Secretary. This argument finds some support in two recent First Circuit cases. The First Circuit recently stated that "the government may be bound by an unauthorized agreement if a properly authorized official subsequently ratifies it." *United States v. Flemmi,* 225 F.3d 78, 90 (1st Cir.2000). In addition, in a case involving the administration of the Head Start program by the United States Department of Health and Human Services, the First Circuit upheld the decision of the district court that an authorized official could ratify the action of a subordinate who acted outside of his statutory authority. *See Action for Boston Cmty. Dev. v. Shalala,* 136 F.3d 29 (1998).

Ratification is the affirmance of an agent's previous unauthorized act by the principal. Ratification may be express, such as where the principal confirms the ratification in writing, or it may be implied. In the First Circuit, "ratification can be implied only when the ratifying official knows of the agreement, fails to repudiate it in a timely manner, and accepts benefits under it." *Flemmi,* 225 F.3d at 90. In either case, demonstrating that the ratifying official possessed full knowledge of the material facts at the time of the alleged ratification is crucial. *See United States v. Beebe,* 180 U.S. 343, 354, 21 S.Ct. 371, 45

L.Ed. 563 (1901). Thus, ratification is a fact intensive issue.

Here, SCHS claims that the amendments to the HAP Contract and Regulatory Agreement, the payment of contract rents under the budget-based method from 1995 to July of 1997, and HUD's prior statement that the Secretary approved the conversion to the budget-based method for BJI show that, at the very least, the Secretary ratified the conversion.

In conjunction with its opposition to the HUD defendants' motion for summary judgment, plaintiff included a statement of material facts which it contends are in dispute as required by Rule 12.1 of the Local Rules of the United States District Court for the District of Rhode Island. Plaintiff's statement raises the issue of whether the conversion to the budget-based method was ratified, as well as the issue of which HUD officials expressly or implicitly approved, authorized, or acquiesced in the conversion to budget-based rents for BJI. This Court agrees that the question of whether the Secretary or a designee ratified the conversion to the budget-based method presents genuine issues of material fact. Accordingly, the facts will have to be developed at trial.

■ At this stage of the analysis, the Court finally reaches the ultimate question in this case—whether the rent-reduction bar prohibits HUD from reducing BJI's contract rents. However, this Court's determination that a genuine issue of material fact exists with respect to whether a waiver of the applicable regulations was granted precludes this Court from deciding the issue and granting summary judgment in favor of either party. That is because this Court adopts the reasoning of *Melrose* insofar as that case holds that the rent-reduction bar does not prohibit HUD from unilaterally reducing unlawful contract rents.

Before reaching its determination that the rent-reduction bar does not prohibit HUD from reducing unlawful contract rents, the *Melrose* Court methodically construed § 1437f(c)(2)(C). The *Melrose* Court found that the legislative history of the rent-reduction bar provision clearly established that Congress enacted the provision to prevent HUD field offices from arbitrarily reducing contract rents through application of the rent comparability provision. *See Melrose*, 43 Fed. Cl. at 141. This is a separate provision contained in § 1437f(c)(2)(C) that prohibits material differences in rents charged for assisted units and comparable unassisted units within the same market area. *See* H.R.Rep. No. 100–122, 100th Cong., 1st Sess. at 32 (1987), *reprinted in* 1987 U.S.C.C.A.N. 3317, 3348–49. In particular, the *Melrose* Court concluded that "[t]he recission of an illegal rent increase by HUD ... cannot be confused with the activity Congress identified in the legislative history as necessary to halt by enacting the rent reduction bar." *Melrose*, 43 Fed. Cl. at 141.

Several of the cases cited by SCHS involve situations where courts have applied the rent-reduction bar even though HUD's proposed rent reduction was not premised on application of the rent comparability provision. *See e.g., Terrace Hous. Assocs., Ltd. v. Cisneros*, 32 F.3d 461, 463 (10th Cir.1994)(rent-reduction bar applied where HUD authorized excessive rents due to incorrect calculations); *Foxglenn Investors Ltd. P'ship v. Cisneros*, 35 F.3d 947 (4th Cir.1994)(same); *Atlantic Terrace Ltd. P'ship v. Cisneros*, 1994 WL 248239 (D.D.C.)(same).

However, these cases all involve situations where HUD sought to reduce contract rents set pursuant to lawful and properly authorized agreements. None of these cases involve the precise issue presented by *Melrose* and by this case, where HUD's reduction of contract rents is premised on the argument that the contract rents were unauthorized and are therefore illegal in the first instance. The distinction between an unlawful agreement and a lawful agreement is significant. The *Melrose* Court determined that it could not overlook this distinction, and concluded that Congress did not intend for the rent-reduction bar to prevent HUD from reducing or rescinding unlawful contract rents. This Court is in agreement.

In addition, if this Court were to construe the rent-reduction bar in such a manner that it bound HUD to unlawful contract rents, it would produce a result that is inconsistent with the well-established principle that the United States cannot be bound by its agents acting outside the scope of their lawful authority. *See, e.g. Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)(holding that the federal government can only be bound by officials with actual authority to bind the government); *Hachikian v. Fed. Deposit Ins. Corp.*, 96 F.3d 502 (1st Cir. 1996)(same). For these reasons, the Court holds that the rent-reduction bar provision contained in 42 U.S.C. § 1437f(c)(2)(C) does not prevent HUD from unilaterally reducing unlawful contract rents.

To summarize, the outcome of this case ultimately hinges on whether there was a valid waiver of the regulations or, in the alternative, a ratification of the conversion by the Secretary or appropriate designee. Without a valid waiver or a ratification of the conversion, the conversion to the budget-based method is unlawful and unenforceable. The rent-reduction bar cannot prohibit HUD from unilaterally reducing rents that are the product of an unlawful agreement. However, if the Secretary did grant a waiver or ratify the conversion, the contract rents are lawful and the rent-reduction bar prohibits HUD from unilat-

erally reducing BJI's contract rents. As a result, the following issues must be resolved through further proceedings in this case: (1) whether the Secretary or other authorized individual at HUD granted a regulatory waiver in accordance with 42 U.S.C. § 3535(q), and, if not, (2) whether the Secretary or a designee ratified the conversion to the budget-based method for BJI.

III. Motion to Dismiss

■ In the 1998 lawsuit, plaintiffs SCHS and Gatsby seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that reasonable attorneys' fees and expenses incurred by SCHS in the 1997 lawsuit are appropriate project expenses which may be paid from contract rents.

SCHS and Gatsby filed their complaint following an exchange of letters between Alden C. Harrington, counsel for SCHS, and William Poole of the Office of Assistant General Counsel for HUD. Mr. Harrington's first letter to Mr. Poole sought confirmation of several administrative issues, and included the following statement: "I did want to further confirm that you indicated that reasonable attorney's fee [sic] attributable to this litigation were appropriate project expenses." *See* Pl.'s Compl., Ex. A.

In response, Mr. Poole sent a letter to Mr. Harrington, stating that he did not indicate that reasonable attorneys' fees attributable to the litigation were appropriate project expenses, and that such expenses were not appropriate project expenses. *See* Pl.'s Compl., Ex. B. Mr. Poole's letter further instructed Mr. Harrington to contact the Assistant United States Attorney assigned to the subject litigation with any further questions. *See id.*

Not satisfied with this response, Mr. Harrington sent a second letter to Mr. Poole, requesting that Mr. Poole provide authority for his position that reasonable attorneys' fees were not appropriate project expenses. *See* Pl.s' Compl., Ex. C. Receiving no response to this letter, plaintiffs filed this action for declaratory judgment. Thereafter, HUD filed a motion to dismiss pursuant to 12(b)(6), claiming that plaintiff failed to state a claim upon which relief could be granted.

A. Legal Standard

In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. *See Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir.1998). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

However, the standard "does not mean ... that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized ... '[E]mpirically unverifiable' conclusions, not 'logically compelled, or at least supported, by the stated facts,' deserve no deference." *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir.1992)(quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir.1989)).

B. Discussion

In order to state a claim under the Declaratory Judgment Act, plaintiff must allege sufficient facts to establish that an actual controversy exists within the jurisdiction of the court. *See* 28 U.S.C. § 2201(a). The First Circuit employs the following two-part test to determine the presence of an actual controversy:

First, we consider whether an issue is fit for review, e.g., whether a challenged government action is final and whether determination of the merits turns upon facts which may not yet be sufficiently developed. Second, we consider the question of hardship, a question which typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties.

*Rhode Island v. Narragansett Indian Tribe,* 19 F.3d 685, 692 (1st Cir.1994) (citation and internal quotation marks omitted).

In addition, the First Circuit instructs that "the linchpin of ripeness" is adverseness. *Id.* Thus, establishing the existence of an actual controversy under the Declaratory Judgment Act "demands that 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Id.* at 693 (citations omitted).

HUD argues that plaintiffs have failed to establish the existence of an actual controversy with respect to whether reasonable attorneys' fees are appropriate project expenses for ·two reasons. First, HUD submits that there is no final government action relating to the payment of attorneys' fees from BJI's contract rents. HUD has not examined any fee expenditures to determine their reasonableness, and therefore, has not reached a final determination as to whether attorneys' fees are appropriate project expenses. Second, HUD has not prohibited SCHS from paying attorneys' fees out of the operating funds for BJI. In fact, plaintiffs have transferred over $200,000.00 from the operating fund to their attorneys. Therefore, defendants contend that there is no hardship creating a direct and immediate dilemma for plaintiffs.

As it must, the Court construes the complaint in the light most favorable to plaintiffs and takes all well-pleaded allegations to be true. Nevertheless, the Court concludes that plaintiffs have not established the existence of an actual controversy.

The sole basis contained in plaintiffs' complaint for claiming that an actual controversy exists with regard to the payment of attorneys' fees from contract rents consists of the three letters exchanged by Mr. Harrington and Mr. Poole. In addition, the only evidence to support plaintiffs' contention that an actual controversy exists with regard to the attorneys' fees is the statement in Mr. Poole's letter that he did not consider attorneys' fees to be appropriate project expenses. These allegations simply do not support plaintiffs' contention that HUD reached a final determination as to whether attorneys' fees are appropriate project expenses, and that HUD's determination caused plaintiffs to suffer direct and immediate hardship.

In fact, the hardship complained of by plaintiffs—fear of criminal or civil prosecution as a result of paying attorneys' fees from operating funds, is exactly the type of unforeseen and undeveloped fact that mitigates against a finding that an actual controversy exists between the parties. The Court is mindful that "a litigant 'does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is impending that is enough.' " *Narragansett Indian Tribe,* 19 F.3d at 693 (quoting *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Development Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (citations omitted)). However, as the facts presently exist, there is no threatened or impending injury to plaintiffs, only a statement of opinion as to whether such expenditures are appropriate.

Accordingly, this Court grants HUD's motion to dismiss the complaint, without prejudice, for failure to state a claim

upon which relief can be granted. The complaint is clearly premature. For this reason, the Court does not reach the remaining arguments raised by HUD in its motion, namely that Gatsby lacks standing to bring this action and that plaintiffs' claims for relief under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1994), are untimely.

## IV. Conclusion

For the foregoing reasons, SCHS's motion for partial summary judgment and the HUD defendants' motion for summary judgment in C.A. No. 97–368L are denied. The HUD defendants' motion to dismiss C.A. No. 98–193L is granted. The Clerk shall enter judgment dismissing C.A. No. 98–193L without prejudice. It is so ordered.